Argued and submitted June 16, reversed and remanded on petition; affirmed on cross-petition July 28, 1993

## McKAY CREEK VALLEY ASSOCIATION
### and Chris Clark King,
*Petitioners - Cross-Respondents,*

*v.*

## WASHINGTON COUNTY,
*Respondent,*

*and*

## KARBAN CORPORATION,
*Respondent - Cross-Petitioner.*

(LUBA No. 92-238; CA A79679)

857 P2d 167

Robert L. Liberty, Portland, argued the cause and filed the briefs for petitioners - cross-respondents.

David C. Noren, Senior Assistant County Counsel, Hillsboro, argued the cause for respondent. With him on the brief was John M. Junkin, Washington County Counsel, Hillsboro.

William A. Monahan, Portland, argued the cause for respondent - cross-petitioner. With him on the brief was Timothy V. Ramis, Portland.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioners seek review of and respondent Karban Corporation (respondent) cross-petitions from LUBA's remand of Washington County's approval of respondent's application to operate an aggregate processing facility in an exclusive farm use zone. LUBA rejected the county's contrary conclusion and held that the proposed use was not one authorized by ORS 215.213(2)(d), at least under the theories that respondent preserved, because the aggregate processing that respondent proposed to conduct on the site did not include final batching and blending of aggregate into asphalt or portland cement. That final processing was to occur off-premises.

ORS 215.213(2)(d) authorizes as uses in EFU zones:

"Operations conducted for:

"(A) Mining and processing of geothermal resources as defined by ORS 522.005 and oil and gas as defined by ORS 520.005 * * *;

"(B) Mining of aggregate and other mineral and other subsurface resources subject to ORS 215.298;

"(C) Processing, as defined by ORS 517.750, of aggregate into asphalt or portland cement; and

"(D) Processing of other mineral resources and other subsurface resources."

The county concluded that the proposed use was not permissible under paragraph (C), because it understood that paragraph to require actual on-site final processing into asphalt or portland cement, as distinct from other types of preliminary processing described in ORS 517.750(11). However, the county decided that the use qualified under paragraph (D) of the statute. It reasoned that the legislature could not logically have intended to allow the more intensive operations contemplated by paragraph (C), but to disallow the less disruptive processing operations planned by respondent. The county construed the phrase "processing of other mineral resources" in paragraph (D) to include aggregate processing that does not extend to the final production of asphalt or cement.

LUBA disagreed with the county's reading of ORS 215.213(2)(d)(D), stating that it "effectively amends [the statute] to permit 'other processing of aggregate resources,'" when the unambiguous language of the paragraph refers to the processing of mineral resources other than aggregate. LUBA appeared to question the county's interpretation of ORS 215.213(2)(d)(C), but it declined to decide that issue. LUBA concluded that respondent had not preserved the county's adverse ruling on paragraph (C) either within the county process itself or by a petition to LUBA. Although respondent and the county in their arguments to us question LUBA's conclusion regarding preservation, neither has raised the issue through a petition, a cross-petition or a cross-assignment. *See Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992).

LUBA's disposition was to remand the county's decision. LUBA specifically indicated that the county could consider on remand whether the use was allowable under ORS 215.213(2)(d)(C). Although LUBA also discussed paragraphs (A) and (B) of the statute in its opinion, it *appears* to have held them inapplicable to the proposed use as a matter of law. In any event, the only provision of the statute that it specifically mentioned in connection with its remand was paragraph (C).

Petitioners argue that, having held that the use was not allowable under paragraph (D) and that no issue concerning paragraph (C) was preserved, LUBA erred by remanding the county's decision instead of reversing it outright. In its cross-petition, respondent argues that LUBA erred in rejecting the county's approval of the application under paragraph (D). We turn to that question first.

■ We agree with LUBA that, in the context of the statute, ORS 215.213(2)(d)(D) can only be read to refer to processing of minerals other than aggregate. We also agree that the statute is unambiguous, and that the legislative history on which respondent relies is therefore not relevant to our interpretation. Respondent also contends that, construed as LUBA and we read it, the statute would be illogical and absurd. Respondent explains:

> "LUBA ignores the basic problem, that is, where can aggregate be processed in the EFU zone when the end product is not asphalt or portland cement? Aggregate can be

mined under ORS 215.213(2)(d)(B) and it can be processed into asphalt or portland cement under ORS 215.213(2)(d) [(C)].[1] But, nowhere in ORS 215.213(2)(d)(A) through (C) is processing short of creating asphalt or portland cement identified."

Therefore, respondent concludes, paragraph (D) must be interpreted to contain what the other paragraphs omit, regardless of whether the missing use can be found in its language, because it would be illogical to read the statute as allowing a more intensive use and disallowing one that is less intense.

We note initially that neither LUBA nor we have reached the question of what paragraph (C) means. Assuming the correctness of respondent's understanding of paragraph (C), it does not explain why the omission of its proposed use in that paragraph or in the statute as a whole would be absurd. There are sensible possible explanations for the legislature's action. The fact that a use is less intensive than one that is allowed does not necessarily mean that the less intensive use must be allowed. The legislature could have regarded the more intense use to be of greater economic or societal worth than the other and therefore one that could more justifiably be authorized as a non-agricultural use in a farm zone.

We said in *Southwood Homeowners v. City Council of Philomath*, 106 Or App 21, 24, 806 P2d 162 (1991), that "the 'absurd results' doctrine should be used sparingly, because it entails the risk of judicial displacement of legislative policy on the basis of judicial speculation that the legislature could not have meant what it unmistakably said." *See also State ex rel Kirsch v. Curnutt*, 317 Or 92, 97-98, 853 P2d 1312 (1993). Respondent demonstrates no occasion for us to apply the doctrine here. We affirm on the cross-petition, and turn to the petition.

Petitioners argue that LUBA rejected the county's stated basis for its approval and held that the only arguable alternative basis for the approval had been rejected by the county and had not been properly raised before LUBA. Therefore, they contend, LUBA should have reversed the decision

---

[1] Respondent's brief cites paragraph (D) here. However, in context, only paragraph (C) could have been meant.

instead of remanding it. The parties also dispute whether the "law of the case" doctrine precludes the county from reconsidering the ORS 215.213(2)(d)(C) issue. We do not reach the "law of the case" question, because the problem here is simpler: It is one of preservation and finality. *See Beck v. City of Tillamook, supra.*

■ The county's and respondent's reliance on *Beck* and on *Schatz v. City of Jacksonville,* 113 Or App 675, 835 P2d 923 (1992), for the proposition that "new issues" or alternative bases for approval may be considered at the local level after a LUBA remand, does not aid them. The relevant language in those cases presupposed that there is a reason to remand other than to provide an opportunity to advance the new theories. *See* 113 Or App at 681 n 3. The overriding principle of *Beck* is that issues in land use cases must be brought to finality at the earliest available opportunity. That principle is squarely contrary to the county's and respondent's position. It is doubtful at best whether *Beck* would permit the county to further consider ORS 215.213(2)(d)(C), even if there were independent reasons for a remand. However, nothing in *Beck*, or anywhere else of which we are aware, supports the proposition that reconsideration of the county's interpretation of ORS 215.213(2)(d)(C) can be *the sole reason* for further local proceedings under these circumstances.[2]

Petitioners' argument on this point appears to be correct. LUBA has rejected the county's theory of approval and has held that the alternative theory to which LUBA expressly referred in connection with its remand is not reviewable. *But see* note 3, *infra.* As noted, LUBA's determination that the alternative theory is unreviewable has not been challenged in this court through either a petition, a cross-petition or a cross-assignment of error. The posture of the case would seem to be that, by force of LUBA's opinion and ours, all of the issues in the case have been finally disposed of adversely to the county and respondent.

---

[2] We note that respondent's argument concentrates on the analog of ORS 215.213(2)(d)(C) in the county's legislation, rather than on the statute. The statute is the relevant provision, except insofar as the local legislation might be less favorable to approval of respondent's application than the statute is. *See Forster v. Polk County,* 115 Or App 475, 478, 839 P2d 241 (1992), and authorities there cited.

■     In the usual situation, that set of circumstances would end the case and not serve as an occasion for a remand to the county. However, the situation here is not entirely usual. ORS 197.835(1) requires LUBA to adopt rules "defining the circumstances in which it will reverse rather than remand land use decisions." In compliance with that direction, LUBA has promulgated OAR 661-10-071, to delineate when it will reverse and when it will remand decisions. LUBA's opinion here does not mention that rule or otherwise explain the decision to remand. We remand for it to reconsider its disposition.[3] *See Mason v. Mountain River Estates,* 73 Or App 334, 341, 698 P2d 529, *rev den* 299 Or 314 (1985).

Petitioners make one further assignment, which we understand will be moot if the approval of the use is reversed outright. We do not reach the assignment.[4]

Reversed and remanded on petition; affirmed on cross-petition.

---

[3] Although we are principally concerned with LUBA's remand for further consideration of ORS 215.213(2)(d)(C), LUBA's resolution of any issues under paragraphs (A) and (B) is not *entirely* clear. Our remand does not limit LUBA's inquiry, but allows it to reconsider whatever may be relevant to the disposition. We do not imply that LUBA must always explain why it elects a reversal or a remand in preference to the other, by reference to its rule or otherwise. In this unusual case, however, everything points to a reversal, unless LUBA explains why a remand is indicated.

[4] Should LUBA adhere to its remand, the assignment may be reasserted in a petition to us from LUBA's decision. *Beck v. City of Tillamook, supra; Hendgen v. Clackamas County,* 119 Or App 55, 58 n 3, 849 P2d 1135 (1993).