Argued and submitted July 25, affirmed October 23, 2006

Shelley WETHERELL,
*Respondent,*

*v.*

DOUGLAS COUNTY,
*Respondent,*

*and*

UMPQUA PACIFIC RESOURCES COMPANY, INC.,
*Petitioner.*

2005-174; A132504

146 P3d 343

Stephen Mountainspring argued the cause for petitioner. With him on the brief was Dole, Coalwell, Clark, Mountainspring, Mornarich & Aitken, P.C.

Respondent Shelley Wetherell waived appearance *pro se.*

No appearance for respondent Douglas County.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

SCHUMAN, P. J.

---

* Landau, J., *vice* Richardson, S. J.

## SCHUMAN, P. J.

Douglas County approved a plan by Umpqua Pacific Resources Company, Inc. (Umpqua) to build a nonfarm dwelling in a zone designated for exclusive farm use, despite objections from Wetherell. Wetherell appealed the approval to the Land Use Board of Appeals (LUBA), which rejected the county's approval because, among other reasons, Umpqua had failed to produce substantial evidence that the land on which it wanted to build was unsuitable for farm, livestock, or timber use. *Wetherell v. Douglas County*, 51 Or LUBA 699, 713-14 (2006). Consequently, LUBA remanded the case to the county. Umpqua seeks judicial review, and we affirm.

Umpqua owns a three-acre parcel in Douglas County that has served as a vineyard for more than 30 years. The property is in an exclusive farm use (EFU) zone regulated by ORS 215.203 to 215.311. Under those statutes, Umpqua may not build a dwelling on the vineyard unless the property, or a discrete parcel within the property, is (among other things) "generally unsuitable land for the production of farm crops and livestock or merchantable tree species." ORS 215.284(2)(b).[1] When Umpqua sought approval from the county for a nonfarm dwelling on the vineyard, it presented a report by a soil scientist stating that a .3-acre lot within the larger parcel consisted of inferior quality soil. The report noted that the vines in the .3-acre lot were stunted and less vigorous than the vines in the rest of the parcel and concluded that the soils "render this portion of the property generally unsuitable for the production of farm crops and livestock or merchantable tree species." Wetherell, however, submitted photographic evidence that she claimed showed healthy vines on the .3-acre lot. Further, two horticulture experts submitted letters stating that they had viewed the vineyard at separate times and that the entire three-acre

---

[1] ORS 215.284(2) is implemented in Douglas County by Douglas County Land Use and Development Ordinance 3.43.100. Although Umpqua's application relied on that ordinance, the language of the ordinance and the statute are nearly identical; LUBA held (and Umpqua does not dispute) that "the statute applies directly and that local regulations that implement a statute must be interpreted in a way that is consistent with state statute." As did LUBA, we therefore refer to the statute and use its language. *Wetherell*, 51 Or LUBA at 708.

parcel, including the .3-acre lot, appeared to have healthy vines. In addition, a neighbor submitted written testimony that strawberries, wheat, grain, and buckwheat were grown on the .3-acre lot before it was a vineyard. Based on the evidence presented, the county planning commission found that the .3-acre lot was generally unsuitable for farm, livestock, or timber use.

Wetherell appealed to LUBA, arguing that no substantial evidence supported the county's finding that the .3-acre parcel was unsuitable, and that, in any event, the county erred in concluding that "necessary amenities" to a dwelling such as a well, septic tank, and driveway, could be located outside of the unsuitable lot if the dwelling house itself was located within it.[2] LUBA agreed. Umpqua seeks judicial review.

We begin with the unsuitability issue because it is dispositive. When reviewing a land use decision, LUBA may reverse or remand if the local government's decision is based on facts that are "not supported by substantial evidence in the whole record." ORS 197.835(9)(a)(C). A finding of fact is supported by substantial evidence if the record, viewed as a whole, permits a reasonable person to make that finding. *Younger v. City of Portland*, 305 Or 346, 360, 752 P2d 262 (1988). In turn, our role on judicial review of LUBA's order is to ensure that LUBA has followed the proper "substantial evidence" standard in reviewing the county's decision. *Id.* at 358-59. ("[W]here LUBA has properly understood and applied the 'substantial evidence' test * * *, a reviewing court should affirm its order[.]"). We are not required to accept LUBA's evaluation of substantiality, however, if the evidence in the case is "so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review[.]" *Id.* at 359.

The portion of LUBA's order rejecting the county's finding of fact regarding suitability states:

[2] Wetherell also argued that the county erred in failing to consider the effect that a dwelling would have on farming the suitable portion of the parcel. LUBA agreed. Umpqua does not seek judicial review of that issue.

"[T]he county's conclusion that the .3-acre portion is generally unsuitable for growing grapes is not supported by substantial evidence in the record. * * * [T]he county's conclusion is based entirely on the opinion of [Umpqua's] expert. That expert's report does not assert or conclude that the .3-acre portion has not, or is not now, producing grapes. Rather, it merely identifies some areas with stunted vines and jumps to the conclusion that the portion is generally unsuitable. * * * To the extent the challenged decision relies on the fact that the vines in the .3-acre portion have not produced grapes, that fact is not supported by substantial evidence in the record.

"[Wetherell] argues that there is no evidence in the record that the property is generally unsuitable for the production of crops other than grapes or for livestock. * * * [Umpqua] relies on the general conclusions in the challenged decision, which in turn relies upon [Umpqua's] expert, that the portion of the property is 'generally unsuitable' for the production of farm crops and livestock or merchantable tree species. However, neither the challenged findings nor [Umpqua's] expert's soils report addresses whether the portion is suitable for pastureland or for strawberries, wheat, grain or buckwheat, which a neighboring property owner testified had been grown on the .3-acre portion prior to its use as a vineyard. Accordingly, we agree with petitioner that the conclusion that the portion of the subject property is generally unsuitable for the production of farm crops other than vineyards or for grazing livestock is not supported by substantial evidence in the record."

*Wetherell*, 51 Or LUBA at 713-14 (2006). LUBA clearly applied the correct "substantial evidence" standard. Equally clearly, LUBA applied the standard correctly. The county found as fact that the .3-acre lot was unsuitable for farm crops, livestock, and merchantable timber. Although that finding echoed the conclusory statement by Umpqua's expert, the expert's finding was itself based entirely on evidence of the lot's soil type and the observation that the vines growing on it were stunted or sparse. There is no evidence that the soil type that the expert identified is incapable of supporting farm crops, livestock, or timber, nor is there any evidence that the land is not and has not been put to those uses. Indeed, there is evidence that it has been put to those uses. A reasonable person, looking at the record as a whole,

could not draw the factual inference of unsuitability that the county drew. LUBA did not err.

That conclusion obviates the need to address the question whether a "dwelling" includes "necessary amenities" such as a septic tank, well, or driveway.

Affirmed.