Argued and submitted April 9, affirmed June 30, 2010

## DEVIN OIL CO., INC.,
*Petitioner,*

*v.*

## MORROW COUNTY;
Greg Flowers;
and Love's Travel Stops & Country Stores, Inc.,
*Respondents.*

## Land Use Board of Appeals
2009103; A144750

235 P3d 705

E. Michael Connors argued the cause for petitioner. With him on the brief was Davis Wright Tremaine LLP.

William K. Kabeiseman argued the cause for respondents. With him on the brief were Jennifer Brager, Garvey Schubert Barer, and Ryan M. Swinburnson.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Morrow County approved the City of Boardman's application to partition a parcel of land so that the city could sell one of the resulting parcels to a private developer who planned to build a travel center. Petitioner, Devin Oil Co., an existing nearby business that would compete with the travel center, opposed the partition and, ultimately, appealed the approval to the Land Use Board of Appeals (LUBA). LUBA sustained some of petitioner's assignments of error, rejected some, and remanded. Petitioner now seeks judicial review of LUBA's remand, arguing that LUBA should have sustained all of its assignments of error. We affirm.

The facts, which we take from LUBA's order, are undisputed. The subject property is a 456-acre parcel of land owned by the city. On behalf of the city and Love's Travel Stops and Country Stores (Love's), Greg Flowers, who is a surveyor for an engineering firm hired by Love's, filed an application to partition the subject property into two parcels. One of the resulting parcels would be 49 acres in size and the other would be 407 acres. Love's planned to buy the 49-acre parcel (the small parcel) from the city and pursue development of the travel center. Although the application did not describe what the contemplated travel center would include, it is undisputed that it would be expected to consist of some or all of the following: "automobile and truck fueling stations, truck wash, truck repair shop, convenience store and/or restaurant." Because the subject property is currently zoned "Space Age Industrial," a zone change would be necessary before a travel center could be approved. Further, before the travel center could actually be built, Love's would be required to obtain the necessary permits.

Flowers (as noted, a registered land surveyor for the engineering firm hired by Love's) testified in support of the application. Following a hearing, the county's planning commission voted to approve the partition. Petitioner appealed the approval to the county court which, after a hearing, affirmed. Petitioner then appealed to LUBA, raising a number of assignments of error.

On appeal, petitioner's first argument was that the county had erred in ruling that it did not need to determine

that the property was "suited" for a travel center. LUBA agreed, relying on Morrow County Subdivision Ordinance (MCSO) 5.030(2), the relevant portion of which provides that a partition application may not be approved unless "[e]ach parcel is suited for the use intended or offered; including, but not limited to, size of the parcels, topography, sewage disposal approval and guaranteed access." However, LUBA did not reverse the county's decision on that basis because it agreed with the county's alternative finding that the record demonstrated that the parcel was, in fact, suitable for a travel center. In addition, LUBA upheld the county's conclusion that MCSO 5.030(3), requiring a finding that "[a]ll required public service and facilities are available and adequate," did not apply in this case to water supply, sewage disposal, and stormwater disposal, because those aspects of the development were not "public service[s] and facilities" but, instead, would be provided on-site by the landowner. Nonetheless, LUBA remanded the county's decision because it concluded that the record before it did not adequately demonstrate that the small parcel would have "guaranteed access" as required by MCSO 5.030(2). Respondents do not seek judicial review of that part of LUBA's opinion.

■ "[O]ur role on judicial review of LUBA's order is to ensure that LUBA has followed the proper 'substantial evidence' standard in reviewing the county's decision." *Wetherell v. Douglas County*, 209 Or App 1, 4, 146 P3d 343 (2006). LUBA considers all the evidence in the record in evaluating whether a finding is supported by substantial evidence and determines whether the evidence would permit a reasonable person to make that finding. *Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008); *Wetherell*, 209 Or App at 4. Where LUBA properly articulates the substantial evidence standard of review, we will affirm unless there is no evidence to support the finding or the evidence in the case is "so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review[.]" *Younger v. City of Portland*, 305 Or 346, 359, 752 P2d 262 (1988).

In its first assignment of error, petitioner contends that, in upholding the county's determination that the property is "suited" for use as a travel center, LUBA failed to

properly apply substantial evidence review. According to petitioner, LUBA instead created and applied a lesser standard and, thereby, acted contrary to "long recognized evidentiary standards, the express language and purpose of MCSO 5.030, ORS 92.044 and this [c]ourt's" decision in *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 30 P3d 420 (2001).[1] (Boldface omitted.) Further, petitioner argues, LUBA erred not only by applying the wrong standard, but in misapplying the standard that it did apply by requiring petitioner to establish *non*suitability, when the proper allocation of the burden is to require respondents to establish suitability. Respondents counter that LUBA did not apply some lesser evidentiary standard or shift the burden as petitioner contends, but instead "properly articulated and applied the substantial evidence standard in reviewing the County's decision[.]" We agree with respondents.

■■ Petitioner's argument in this regard primarily relies on a limited portion of LUBA's opinion. In rejecting petitioner's argument that "unsupported assurances by [Flowers, the applicant's surveyor,] are not sufficient to constitute substantial evidence that a proposal complies with approval standards," LUBA first noted that Flowers was reporting the conclusions of his company's engineers, and then stated:

> "While such testimony might not constitute substantial evidence if the application were to approve a specific development and its facilities under more focused and rigorous development standards, for purposes of approving a partition under MC[S]O 5.030(2) we disagree with petitioner that only *direct* testimony from an engineer is sufficient to constitute substantial evidence that [the small parcel] is suited for a travel center[.]"

(Emphasis in original.) The correct (indeed, the only) meaning of that passage is *not* that LUBA applied a lower standard of review; it is that "substantial evidence" of *suitability*, that is, substantial evidence at a preliminary stage of the approval process that generally occurs "for purposes of

---

[1] We note that petitioner's brief also refers to *Robinson v. City of Silverton*, 188 Or App 489, 72 P3d 684 (2003). However, *Robinson* is a decision in which this court affirmed LUBA's order without opinion. "Cases affirmed without opinion by the Court of Appeals should not be cited as authority." ORAP 5.20(5).

approving a partition" before the applicant has conducted engineering studies or drawn up detailed plans, is different from substantial evidence at a later stage seeking approval of "a specific development and its facilities under more focused and rigorous development standards." "Substantial evidence" is not a phrase that has an unvarying meaning standing alone; it always refers to substantial evidence in support *of something*—in particular, of "a finding." *See* ORS 183.482(8)(c). Substantial evidence in support of a finding that a preliminary plan is suitable, LUBA correctly explained, is simply not the same thing as substantial evidence in support of a finding that a final plan is in complete compliance with "rigorous development standards."

■  Petitioner's "burden shifting" argument is equally unpersuasive. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). In its review of the record, LUBA observed that *all* of the evidence supported the suitability finding. By observing that petitioner presented no evidence that weighed against that finding, LUBA was not shifting the burden; it was observing that respondents presented the administrative equivalent of a *prima facie* case and nothing in the record rebutted it. LUBA's task was to determine whether, in light of all the evidence in the record, a reasonable person could find that the small parcel was suitable for a travel center, and LUBA did just that.

In its opinion, LUBA outlined petitioner's disagreement with the county's suitability finding: "In particular, petitioner challenge[d] the county's * * * findings with respect to water supply, sewage disposal, and stormwater disposal." It then reviewed the relevant evidence in the record. The evidence at issue was the testimony of Flowers,

"a registered land surveyor and survey manager for an engineering firm, who testified that engineers at his firm conducted preliminary investigations and consulted with the appropriate state agencies regarding the suitability of the property to accommodate a travel center, with respect to water, sewage and stormwater disposal, and concluded based on that investigation and consultation that [the small parcel] is suitable."

LUBA noted that Flowers testified that a 49-acre parcel was "being proposed to ensure that there is adequate area to provide approved sewage disposal, drain field replacement and well placement. Preliminary investigation indicates that the proposed site is more than adequate and conversations with [relevant state agencies] have supported the preliminary engineering report." According to LUBA,

> "[Flowers] submitted site plans indicating that a travel center would occupy approximately 12 of the 49 acres in [the small parcel], and testified based on input from USKH engineers and consultations with state agencies that the remaining 37 acres provide more than adequate area to accommodate any septic, stormwater and well designs required for a travel center."

In "the absence of any suggestion [in the record] of topographic or other constraints on facility design or adequacy," LUBA determined that a reasonable person could rely on the evidence submitted to make a suitability determination. It went on to conclude that substantial evidence supported the county's suitability determination with respect to water supply, and sewage and stormwater disposal. It specifically found that "[a] reasonable person could rely on [Flowers'] testimony to conclude that [the small parcel] is suited for a travel center, considering water supply." Furthermore, it concluded "the testimony in the record indicates that the parcel is suited for an on-site septic system" and that "given the absence of any reason to believe otherwise, a reasonable decision maker" could conclude that the small parcel was suited for use as a travel center with respect to stormwater disposal. Contrary to petitioner's assertion, LUBA clearly applied substantial evidence review and determined that the county's suitability findings were supported by substantial evidence. Furthermore, there was evidence to support LUBA's determination and that evidence is such that we could not say that LUBA misapplied its standard of review. Accordingly, we conclude that LUBA did not err in affirming the county's finding that the small parcel was suited for a travel center pursuant to MCSO 5.030(2).

■      In its second assignment of error, petitioner shifts its focus from MCSO 5.030(2), which requires a finding of suitability, to MCSO 5.030(3), which requires a related but distinct finding that "all required public service and facilities

are available and adequate." Petitioner argued to the county that the parcel did not have available and adequate water, sewer, or stormwater services. The county rejected that contention. It interpreted the term "public service" as including only service "provided by a public agency," and noted that, in the part of Morrow County where the property was located, water, sewer, and stormwater services were provided by individual users for themselves. LUBA interpreted the county's reference to "public agenc[ies]" not as a reference to publicly *owned* municipal corporations, but to "services and facilities provided by third parties that serve more than one property." It then concluded that, because the proposed travel center would provide its own water, sewer, and stormwater facilities and services, and would not make those services available to others, those services did not fall within the scope of MCSO 5.030(3). We focus on the county's interpretation of the term "public service" as clarified by LUBA.

■     "Whether a local government's interpretation of its ordinance is 'inconsistent' with the language of the ordinance depends on whether the interpretation is plausible, given the interpretive principles that ordinarily apply to the construction of ordinances under the rules of *PGE* [*v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993)]." *Foland v. Jackson County*, 215 Or App 157, 164, 168 P3d 1238, *rev den*, 343 Or 690 (2007). Pursuant to that standard, on review of LUBA's decision, we must determine "whether [the local government's] interpretation satisfie[s] *PGE*'s first level threshold of plausibility. If it does, then * * * we must sustain that interpretation, even if another interpretation might be 'better' or more sensible or persuasive." *Siporen v. City of Medford*, 231 Or App 585, 599, 220 P3d 427 (2009), *rev allowed*, 348 Or 13 (2010); *see also* ORS 197.829.

In our view, the county's interpretation is not inconsistent with the express language of the ordinance, which specifically refers to "public service and facilities." The term "public" generally means something "supported by or for the benefit of the community as a whole" or "accessible to or shared by all members of the community * * * ‹water supply›[.]" *Webster's Third New Int'l Dictionary* 1836 (unabridged ed 2002); *see PGE*, 317 Or at 611 ("[W]ords of common usage typically should be given their plain, natural, and ordinary meaning."). Furthermore, the term "public service"

means "a publicly or privately owned enterprise (as a water-works, railway, telephone company) conducted for the benefit of the community as a whole[.]" *Id.* In light of those definitions, in our view, LUBA correctly concluded that the phrase "public service and facilities" in MCSO 5.030(3) does not refer to a service provided by a private entity and not made available to others. Thus, the county's interpretation of MCSO 5.030(3) as inapplicable to services that would be installed by an individual property owner for the benefit of only its own property is not inconsistent with the express language of the ordinance. Rather, the county's conclusion that such services are not "public" is entirely in harmony with the plain meaning of that term.

In sum, we conclude that LUBA did not err in any respect.

Affirmed.