Argued and submitted June 7, affirmed August 29, 2012

# DEVIN OIL CO.,
*Petitioner,*

*v.*

# MORROW COUNTY;
## and Love's Travel Stops & Country Stores, Inc.,
*Respondents.*

## Land Use Board of Appeals
2011107; A151098

286 P3d 925

E. Michael Connors argued the cause for petitioner. With him on the brief was Hathaway Koback Connors LLP.

William K. Kabeiseman argued the cause for respondents. With him on the brief were Ryan M. Swinburnson and Garvey Schubert Barer.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

## BREWER, J.

On judicial review, petitioner Devin Oil Co., Inc., seeks reversal and remand of a final opinion and order of the Land Use Board of Appeals (LUBA). In that decision, LUBA upheld an order issued by respondent Morrow County that adopted a Limited Use (LU) overlay zone and approved the plan and zone change application of respondent Love's Travel Stops & Country Stores, Inc., (Love's) for the purpose of developing a travel center at a freeway exit on Interstate Highway 84. We affirm.

Petitioner owns property that is near the subject property, and it operates a business in Morrow County that will compete with the travel center that Love's seeks to develop. This case has a complicated procedural history that was well explained by LUBA in the decision under review:

"The challenged decisions are on remand from LUBA and the Court of Appeals. *Devin Oil Co. Inc. v. Morrow County*, 62 Or LUBA 247, *aff'd* 241 Or App 351, 250 P3d 38 (2010), *rev den*, 350 Or 408, (2011) (*Devin I*). In our decision in *Devin I*, we described the subject property and proposed development as follows:

"'The subject property is an undeveloped 49-acre parcel located at the junction of Interstate Highway 84 and Tower Road, five miles from the City of Boardman urban growth boundary, and near the Boardman Airport. The property is designated Industrial and zoned Space Age Industrial (SAI). On December 3, 2009, [Love's] filed an application seeking (1) a comprehensive plan map amendment from Industrial to Commercial, (2) a zoning map amendment from SAI to Tourist Commercial (TC), and (3) comprehensive plan text amendments to provide plan policies to support the TC zoning designation. The plan/zoning amendments are intended to permit [Love's] to seek approval for a 'travel center' on 12 acres of the subject property, consisting of truck and automobile fueling stations, convenience store, restaurant, and tire changing facility. The TC zone allows as outright permitted uses auto-oriented uses such as fueling stations, retail outlets, restaurants, and vehicle-repair services.'

"The subject property is also located in the Airport Approach (AA) overlay zone, which requires a conditional

use permit for development such as the proposed travel center. The plan/zoning amendments required a new reasons exception to statewide planning Goals 3 (Agricultural Land) and 14 (Urbanization) to rezone the property to allow tourist commercial uses such as the proposed travel center. On May 5, 2010, the county court approved the plan/zoning amendments based on the reasons exceptions. Among the conditions imposed on the plan/zone amendment was Condition 6, which provided that the amendment is conditioned to allow 'only the construction of a travel center or other use of similar density, configuration and type.'

"Petitioner appealed the county's May 5, 2010 decisions to LUBA. In [*Devin I*], LUBA remanded the county's decision on several grounds. Specifically, LUBA sustained petitioner's third assignment of error, which argued that the county cannot rely upon conditional zoning to limit the 'uses, density, public facilities and services, and activities to only those that are justified in the exception,' as required by OAR 660-004-0018(4), but must instead use the county's Limited Use (LU) overlay zone, which was adopted for that specific purpose. We also sustained in part the sixth assignment of error, in which petitioner argued that there was not substantial evidence in the record to support the county's conclusion that, as limited by Condition 6, development of a travel center on the subject property under the TC zone would not 'significantly affect' Tower Road, for purposes of the Transportation Planning Rule (TPR) at OAR 661-010-0060.[1] Finally, under the seventh assignment of error, we remanded for the county to address several transportation-related issues under two local code standards that applied to the conditional use permit.

"On remand, the county applied the LU overlay zone to ensure compliance with OAR 660-004-0018(4). Among the conditions imposed under the LU overlay zone is a new Condition 6, which is worded almost identically to the former Condition 6 imposed on the zone change to TC: 'This Limited Use overlay authorizes only the construction of a travel center or other use of similar density, configuration

---

[1] The TPR applies to all proposed comprehensive plan and zoning map amendments and ensures compliance with Goal 12 (Transportation). The TPR provides that, if a comprehensive plan or zoning map amendment would "significantly affect" a transportation facility within the meaning of the administrative rule, then the local government must adopt one or more of the measures set forth in OAR 660-012-0060(2) to mitigate the significant effect. OAR 660-012-0060(1).

and type.' * * * With respect to the TPR, on remand [Love's] submitted additional evidence, based on which the county concluded that if development under the TC zone is limited to the proposed travel center then the zone change would not significantly affect any transportation facility within the planning period. Finally, the county addressed and found compliance with two local conditional use permit standards. The county's final decisions, on October 26, 2011, again approved the plan/zone amendment and conditional use permit. These appeals followed."

*Devin Oil v. Morrow County*, ___ Or LUBA ___, ___ (LUBA No 2011-107, Mar 7, 2012) (slip op at 2-4).

On appeal to LUBA from the county's decision on remand, petitioner challenged the county's imposition of the LU overlay zone pursuant to Morrow County Zoning Ordinance (MCZO) 3.110, which provides, in relevant part:

"The purpose of the Limited Use Overlay Zone is to limit the list of permitted uses and activities allowed in the zone to only those uses and activities which are justified in the comprehensive plan 'reasons' exception statement under ORS 197.732(1)(c).[2] The Limited Use Overlay Zone is intended to carry out the administrative rule requirement for 'reasons' exceptions pursuant to OAR 660-14-018(3).

"A. Overlay Zone Requirements. When the Limited Use Overlay Zone is applied, the uses permitted in the underlying zone shall be limited to those uses and activities specifically referenced in the ordinance adopting the Limited Use Overlay Zone. The Limited Use Overlay Zone cannot be used to authorize uses other than those expressly provided in the underlying zone. * * *

"The Limited Use Overlay Zone is to be applied through the plan amendment and rezoning process at the time the primary plan and zone designation is being changed. The ordinance adopting the overlay zone shall include findings showing that:

"1. No other zoning district currently provided in the zoning ordinance can be applied consistent with the requirements of the 'reasons' exception statement because

---

² A "reasons exception" allows the county to take an exception to strict compliance with certain Statewide Land Use Planning Goals if there are reasons that justify the exception. *See* ORS 197.732(2)(c).

the zoning would allow uses beyond those justified by the exception;

"2. The proposed zone is the best suited to accommodate the desired uses(s); and

"3. It is required under the exception rule (OAR 660, Division 4) to limit the uses permitted in the proposed zone."

As pertinent here, petitioner disputed the county's determination under MCZO 3.110(A)(3) that the LU overlay zone was required under the exception rule to limit the uses permitted in the TC zone. Petitioner argued that only the need to comply with the TPR rule, OAR 660-012-0060, requires that uses allowed in the TC zone be restricted. In a further assignment of error, petitioner challenged Condition 6 of the LU overlay zone. Petitioner argued that the phrase "other use of similar density, configuration and type" contained in that condition allows uses other than the proposed travel center and is therefore insufficient to ensure consistency with the TPR.

In affirming the county's decision, LUBA rejected those arguments and each of the other challenges that petitioner made to the county's decision. In particular, LUBA rejected petitioner's challenge to Condition 6 of the LU overlay zone on the ground that the substance of that challenge could have been, but was not, raised in the first appeal. On review, petitioner only assigns error to LUBA's rejection of the two arguments set out above. We address each in turn.

In its first assignment of error on review, petitioner asserts that

"LUBA erred by ignoring the County's findings and adopting its own independent conclusion regarding compliance with [MCZO] 3.110(A) (3), a conclusion that is inconsistent with the express language and purpose of MCZO 3.110(A)(3). The County determined that [Love's] satisfied MCZO 3.110(A)(3) because the LU overlay zone was 'required' to ensure compliance with Goal 12 and the TPR, but failed to adopt findings addressing uncontroverted evidence that [Love's] can comply by making the transportation improvements identified by its own traffic

engineer. LUBA ignored the lack of findings and adopted its own independent conclusion that MCZO 3.110(A)(3) is satisfied. It is up to the county, not LUBA, to explain why MZCO 3.110(A)(3) is satisfied when it is undisputed that the LU overlay zone is not the only option available to comply with Goal 12 and the TPR.

"Moreover, LUBA's interpretation is inconsistent with the express language and purpose of MZCO 3.110(A)(3). LUBA's determination that the LU overlay zone is 'required' to comply with Goal 12 and the TPR even though it acknowledges that 'another option exists to ensure consistency' is the opposite of the plain language meaning of that term. LUBA's interpretation would render MCZO 3.110(A)(3) meaningless and is inconsistent with its purpose."

In light of the nature of those challenges, we review LUBA's order to determine if it is unlawful in substance or is not supported by substantial evidence. ORS 197.850(9)(a), (c). In order to adequately address petitioner's arguments, we set out the county's findings on the criterion at issue in petitioner's first assignment of error:

"[Petitioner] argues that MCZO 3.110(A)(3), which requires findings showing that '[the overlay zone] is required under the exception rule (OAR 660, Division 4) to limit the uses permitted in the proposed zone' is not met because the overlay was imposed as a result of transportation inadequacies, not by the uses proposed. The [county] concludes that [petitioner] misses the point. As discussed above, the exception, which is not at issue in this remand, was taken to implement Goal 8. It did not take an exception to Goal 12, which is implemented through the Transportation Planning Rule ('TPR' OAR Division 660-012). OAR 660-004-0018(1) states that 'an exception to one goal or a portion of one goal do[es] not relieve a jurisdiction from remaining goal requirements and do[es] not authorize uses, densities, public facilities and services, or activities other than those recognized or justified by the applicable exception.' * * * [A] re-zoning to TC, without the LU overlay, would violate the TPR, and thus Goal 12. Because there was no exception to Goal 12, the County is required by OAR 660-004-0018(4)(a) to 'limit the uses, density, public facilities and services, and activities to only those that are

justified in the exception.' In other words, it is the exception rule that requires the County to limit the uses because of transportation issues and, therefore, [the county] finds that MCZO 3.110(A)(3) is also satisfied.

"Moreover, LUBA's decision explains that it is both [OAR] Division 660-004, as well as MCZO 3.110 that requires application of the LU overlay in cases where the primary zone does not already limit uses to the ones already proposed. Therefore, the [county] finds that the overlay is required by the exception rule (OAR Division 660-004)."

It is apparent from its findings that the county interpreted MCZO 3.110(A)(3) to require (and by necessary implication, at least permit) consideration of all applicable statewide planning goal requirements, not merely those for which a reasons exception was taken. By contrast, LUBA understood petitioner to argue

"that MCZO 3.110(A)(3) must be interpreted to allow application of the LU overlay zone only if the overlay zone is required in order to satisfy the reasons exception, in this case to Goals 3 and 14. Because the county took no exception to Goal 12, petitioner argues, a desire to be consistent with Goal 12 cannot be the sole basis for applying the LU overlay zone to limit uses allowed in the TC zone. The above-quoted finding embodies a very different understanding of MCZO 3.110(A)(3). The county clearly understands MCZO 3.110(A)(3) to authorize application of the LU overlay zone where limiting uses allowed in the base zone is necessary in order to comply with statewide planning goal requirements, including goal requirements for which the county is not adopting an exception."

___ Or LUBA at ___ (slip op at 10) (emphasis omitted). LUBA also observed that

"[p]etitioner does not even argue that that view of MCZO 3.110(A)(3) conflicts with OAR 660-004-0018(1), and we do not see that it does. We see no error in employing the limitations on uses otherwise required by OAR 660-004-0018(1) to also ensure that development allowed under a reasons exception to one statewide planning goal is consistent with other statewide planning goals."

___ Or LUBA at ___ (slip op at 10-11).

The county specifically relied on the requirement in OAR 660-004-0018(1), which is part of the "exception" rule, that

> "[e]xception[s] to one goal or a portion of one goal do not relieve a jurisdiction from remaining goal requirements and do not authorize uses, densities, public facilities and services, or activities other than those recognized or justified by the applicable exception."

MCZO 3.110(A)(3) requires a finding that the exception rule, OAR chapter 660, division 4, requires the uses to be limited at the site. The county expressly found such a requirement in OAR 660-004-0018(4)(a), which provides that,

> "[w]hen a local government takes an exception under the 'Reasons' section of ORS 197.732(1)(c) and OAR 660-004-0020 through 660-004-0022, plan and zone designations must limit the uses, density, public facilities and services, and activities to only those that are justified in the exception."

In this case, the LU overlay zone that the county adopted expressly limited uses otherwise allowed in the TC zone, not merely to address Goal 12 concerns, but also to be consistent with the reasons exception that was taken to Goal 3. In the order that LUBA reviewed in this case, the county imposed through the LU overlay zone "the same conditions as were imposed through [its previous order]." In justifying an exception to Goal 3 in its previous order, the county had expressly indicated, among other things, that the transportation improvements that Love's was required to make would be sufficient so as not to interfere with harvest-time traffic requirements for an adjacent agricultural use. Having imposed that and other requirements, at least in part, to comply with Goal 3 concerns, the county complied with MCZO 3.110(3), whether or not that ordinance provision literally required the limitation of uses to be consistent with statewide goals, such as Goal 12, for which no exception was taken. Petitioner cites no authority, and we are aware of none, for the proposition that the county's approval of the LU overlay zone could not also include conditions that addressed other statewide planning goals, including Goal 12, for which no exception was taken.

Even if that were not so, however, we would reject petitioner's argument. Petitioner has never argued that the LU overlay zone was not necessary to limit uses to those justified in the reasons exception that was taken to Goals 3 and 14. To the contrary, in *Devin I*, the thrust of petitioner's argument in its third assignment of error before LUBA was that "the LU overlay zone is the exclusive means for the county to comply with OAR 660-004-0018(4) and limit uses to those justified in the reasons exception statement." 62 Or LUBA at 263. As LUBA observed in upholding that assignment of error in *Devin I*, the LU overlay zone is "the only [Morrow County Zoning Ordinance] provision that is expressly intended" for the purpose of ensuring compliance with OAR 660-004-0018(4). *Id.* at 264. For that reason, LUBA concluded that, in the absence of "an already limited primary zone," the LU overlay zone must be used to ensure compliance with OAR 660-004-0018(4). *Id.* at 266. Petitioner invited that ruling from LUBA, and it stands on review in this case. For each of the foregoing reasons, we reject petitioner's first subargument.

In its second subargument, petitioner remonstrates that the evidentiary record compels the conclusion that improvements can be made that would support a complete rezone of the subject property to TC without an LU overlay. Petitioner asserts that there was uncontroverted evidence in the record that Love's can comply with Goal 12 and the TPR by making transportation improvements that its traffic engineer identified. Based on that premise, petitioner asserts that

"LUBA erred by independently deciding this issue on appeal rather than remanding so the County can address it and adopt its own findings. The county's findings must address and respond to specific issues relevant to compliance with the applicable approval standards that were raised in the local proceedings. * * * There is no question that the county's findings do not respond to this issue and that it is relevant to compliance with MCZO 3.110(A)(3). LUBA's jurisdiction is limited to reviewing the county's decision, not making its own independent determination of compliance with the local regulations. ORS 197.835(1). It is up to the County, not LUBA, to explain why MCZO 3.110(A)(3) is satisfied when it is undisputed that the LU overlay zone

is not the only option available to comply with Goal 12 and the TPR."

The parties dispute at length whether petitioner's evidentiary assertion is correct. However, we need not detain ourselves with that issue because there is a dispositive flaw in petitioner's legal analysis. As discussed, MCZO 3.110(A)(3) is concerned with whether the LU overlay zone is required by the exception rule "to limit the uses permitted in the proposed zone." Conditioning a zone change to require construction of transportation improvements to accommodate traffic generated in an unrestricted TC zone would not "limit the uses permitted in the proposed zone" for purposes of the exceptions that were taken. Therefore, evidence in the record that another option exists to ensure consistency with the TPR does not undermine the county's decision to adopt the LU overlay zone to limit use, at least in part, to satisfy the reasons exceptions that were taken in this case. Accordingly, we reject petitioner's second subargument in its first assignment of error.

In its second assignment of error, petitioner argues:

"LUBA erred in concluding that petitioner's second assignment of error challenging Condition 6 of the LU overlay zone decision is precluded on the grounds that it is a resolved issue. Petitioner's challenge of Condition 6 is an unresolved issue because Condition 6 is part of the new LU overlay decision adopted by the county in direct response to *Devin I*. LUBA's reliance on the similarity between Condition 6 and the condition of approval adopted for the County's original Plan/Zone Change Application decision ('Zone Change Condition') disregards the fact that *Devin I* invalidated the Zone Change Condition. Moreover, in *Devin I*, petitioner specifically challenged the Zone Change Condition on the grounds that it was insufficient to demonstrate compliance with the TPR and prevailed on that argument. LUBA's determination that Petitioner could have raised this issue in *Devin I* also disregards the fact that the County had to apply new approval criteria (MCZO 3.110) on remand. Finally, LUBA failed to consider the fact that Respondents waived the argument that this is a resolved issue because they never raised it below."

As did LUBA, we reject that argument. The exception rule, OAR chapter 660, division 4, required the county to limit the uses on the site. In *Devin I*, that limitation was accomplished through a condition of approval that provided as follows:

"6. This zone change is conditioned to allow only the construction of a travel center or other use of similar density, configuration and type."

In *Devin I*, petitioner made several challenges to the county's initial decision, but it did not challenge the substance of Condition 6 and whether it was sufficient to comply with OAR 660-004-0018(4). LUBA remanded the county's decision on the ground that the county had used the wrong mechanism to limit the uses on the site. As noted, LUBA concluded that the pertinent ordinance required use limitations such as the one imposed in this case to be imposed through an LU overlay.

On remand, the county followed LUBA's instructions and, after considering the criteria in MCZO 3.110(A), adopted the following condition:

"6. This Limited Use overlay authorizes only the construction of a travel center or other use of similar density, configuration or type."

That condition is identical to the condition at issue in *Devin I*. The only practical difference between the two is that the current condition 6 is found in a LU overlay, rather than a condition of approval.

LUBA concluded that petitioner had waived its current challenge:

"Under [*Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992)], a party at LUBA fails to preserve an issue for review if, in a prior stage of a single proceeding, that issue is decided adversely to the party or that issue could have been raised and was not raised. 313 Or at 154. Petitioner does not dispute that the issue of whether the language 'other use of similar density, configuration or type' is consistent with the TPR could have been raised in the earlier appeal. Petitioner's second assignment of error in *Devin I* challenged Condition 6 to the TC zone change and raised several issues regarding compliance with the TPR, but did not include any argument that the language 'other use of

similar density, configuration or type' is inconsistent with or insufficient to comply with the TPR. LUBA sustained the second assignment of error in part, remanding for the county to accept additional evidence and adopt additional findings with respect to an issue that does not concern the question of what 'other use of similar density, configuration or type' means or whether that language is consistent with the TPR. The scope of the county's proceedings on remand with respect to the TPR was limited, and the specific evidentiary issue we remanded to the county was resolved on remand and is not pressed again on appeal. The issue that petitioner seeks to raise in the present appeal is an issue that could have been raised in the earlier appeal.

"In our view, that Condition 6 attached to the LU overlay zone is nominally a 'new' condition does not alter the outcome under *Beck*. On remand, the county simply transferred all six conditions attached to the TC zone change to the LU overlay zone change, with no substantive changes. In particular, the language at issue in this assignment of error, 'other use of similar density, configuration or type,' is identical to that previously imposed, and serves the same function, to ensure consistency with the TPR. In such a circumstance, we do not believe that the law of the case doctrine articulated in *Beck* allows a party who could have challenged that language in an earlier appeal to advance new challenges to the language in the decision on remand, simply because that language is embodied in a nominally 'new' condition of approval. The issue raised in this assignment of error has been waived."

___ Or LUBA at ___ (slip op at 13-14).

Petitioner challenges LUBA's resolution of that issue on the ground that "LUBA's reliance on the similarity between Condition 6 and the Zone Change Condition disregards the fact that *Devin I* invalidated the Zone Change Condition."

The Supreme Court held in *Beck* that issues that LUBA decided in earlier proceedings, and upon which judicial review was not sought, are not subject to review in a judicial review of a subsequent LUBA order. 313 Or at 153. Thus, when LUBA remands a case for further proceedings, the parties are limited to "new, unresolved issues" relating to those remand instructions and cannot raise any "issues that

LUBA affirmed or reversed on their merits." *Id.* In *McKay Creek Valley Association v. Washington County*, 122 Or App 59, 64, 857 P2d 167 (1993), we held that "the overriding principle of *Beck* is that issues in land use cases must be brought to finality at the earliest possible opportunity." *See also Fisher v. City of Gresham*, 69 Or App 411, 414 n 1, 685 P2d 486 (1984) ("It is clear that the legislative policy in land use cases is that 'time is of the essence in reaching final decisions in matters involving land use,' ORS 197.805, and that disputes involving land use decisions ought not be decided piecemeal in unending appeals.").

In this case, the phrasing of the limitation was unquestionably known at the time of the appeal in *Devin I*, and that phrasing was not changed on remand. There is no doubt that the adequacy of the limitation could have been challenged in the first appeal. The fact that the same limitation was applied through a different mechanism does not alter the analysis. Nor is it determinative that new approval criteria were applied on remand. LUBA held in *Devin I* that the LU overlay was the proper mechanism to limit uses on the subject property. The adequacy of the limitation was not governed by the criteria set out in MCZO 3.110(A); those criteria focused on whether it was appropriate in the first instance to limit uses on the site. Issues pertaining to the adequacy of any required limitations were governed by the exception rule, OAR chapter 660, division 4, and the remand required consideration of an entirely different set of criteria set out in MCZO 3.110(A).

Because petitioner's current challenge to the limitation that the county imposed could have been raised, but was not raised, in petitioner's first appeal in this case, petitioner waived its challenge to that limitation. Accordingly, we reject petitioner's second assignment of error.

Affirmed.