Argued and submitted October 26, affirmed December 30, 2015

DEVIN OIL CO., INC.,
*Petitioner,*

*v.*

MORROW COUNTY
and Love's Travel Stops and
Country Stores, Inc.,
*Respondents.*

Land Use Board of Appeals
2015023; A160178

365 P3d 1084

E. Michael Connors argued the cause for petitioner. With him on the briefs was Hathaway Koback Connors LLP.

William K. Kabeiseman argued the cause for respondents. With him on the joint brief were Garvey Schubert Barer, Justin W. Nelson, and Morrow County Counsel.

Alan A. Rappleyea and Washington County Counsel filed the brief *amicus curiae* for The Association of Oregon Counties and The League of Oregon Cities.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Wollheim, Senior Judge.

SERCOMBE, P. J.

**SERCOMBE, P. J.**

Petitioner Devin Oil Co. seeks review of the Land Use Board of Appeals' (LUBA) dismissal of its appeal for lack of standing. Petitioner appealed a decision by Morrow County to grant a 12-month extension of time (the extension decision) to respondent Love's Travel Stops and Country Stores (Love's) to begin implementation of a site plan review approval for its proposed development. ORS 197.830(3) allows an appeal to LUBA of this type of land use decision by "a person adversely affected by the decision." LUBA concluded that petitioner was not "adversely affected" by the extension approval and, accordingly, lacked standing to appeal under ORS 197.830(3). On review for whether LUBA's dismissal order is "unlawful in substance," ORS 197.850(9)(a), we agree with LUBA that petitioner lacked standing and, therefore, affirm.

This case is the latest in a series of appeals by petitioner of land use authorizations given by the county to Love's to build and operate a travel center facility (fuel service stations, restaurants, and shops).[1] The proposed travel center is to be located near an exit from Interstate Highway 84. Petitioner owns and operates two fuel service stations and several commercial fuel cardlock sites near another freeway exit about five miles east of the proposed travel center.

In January 2014, Love's obtained site plan review approval from the county for the design of the travel center. Under Morrow County Zoning Ordinance (MCZO) 4.165, site plan review is a "non-discretionary or 'ministerial' review conducted without a public hearing by the County Planning Director or designee * * * [to ensure] compliance with the basic developmental standards of the land use district, such as building setbacks, lot coverage, maximum building height, and similar provisions."[2] Petitioner appealed the site

---

[1] *See Devin Oil Co., Inc. v. Morrow County*, 60 Or LUBA 336, *aff'd*, 236 Or App 164, 235 P3d 705 (2010) (partition decision); *Devin Oil Co., Inc. v. Morrow County*, 62 Or LUBA 247 (2010), *aff'd*, 241 Or App 351, 250 P3d 38, *rev den*, 350 Or 408 (2011) (conditional use permit); *Devin Oil Co. v. Morrow County*, 65 Or LUBA 104, *aff'd*, 252 Or App 101, 286 P3d 925 (2012) (plan and zone change; limited use overlay zoning).

[2] A site plan review approval does not authorize a land use. One of the review criteria for a proposed site plan is that "[t]he proposed land use is [already]

plan review approval to LUBA, which affirmed the approval. *Devin Oil Co. Inc. v. Morrow County*, 70 Or LUBA 420 (2014).

Under MCZO 4.165(C),

> "Site Plan Review shall be required for all land use actions requiring a Zoning Permit as defined in Section 1.050 of this Ordinance. *The approval shall lapse, and a new application shall be required, if a building permit has not been issued within one year* of Site Review approval, or if development of the site is in violation of the approved plan or other applicable codes."

(Emphasis added.) In January 2015, Love's sought a 12-month extension of the site plan review approval from the county under MCZO 1.050, which allows extensions of time for "zoning permits."[3] The county planning director interpreted MCZO 1.050 to allow extensions of time for site plan review approvals, and approved the extension request, explaining that

> "Morrow County Zoning Ordinance allows us to grant an extension when the request is submitted in writing prior to the expiration date of the approval period and the applicant states reasons that prevented the beginning or continuation of development within the approval period to which the applicant was not responsible.
>
> "Your letter was timely submitted and received by our office on January 8, 2015 requesting an extension and adequate reason was given for the inability to begin development prior to January 10, 2015. Therefore, an extension has been granted under Morrow County Zoning Ordinance section 1.050 Zoning Permit."

---

permitted by the underlying land use district." MCZO 4.165(D)(2). Instead, a site plan sets out the arrangement and composition of the allowed land uses, including the application of any lot coverage, setbacks, off-street parking, road access, utility placement, and storm drainage requirements. MCZO 4.165(D).

[3] MCZO 1.050 provides:

"Prior to the construction, reconstruction, alteration, or change of use of any structure larger than 100 square feet or use for which a zoning permit is required, a zoning permit for such construction, reconstruction, alteration, or change of use or uses shall be obtained from the Planning Director or authorized agent thereof. A zoning permit shall become void after 1 year unless the development action has commenced. A 12-month extension may be granted when submitted to the Planning Department prior to the expiration of the approval period."

Petitioner appealed the extension decision to LUBA under ORS 197.830(3). As noted, that statute allows "a person adversely affected by" a land use decision made without a hearing to appeal the decision. Before LUBA, petitioner asserted that the county misinterpreted its ordinances in allowing the extension, and that no extension of time for a site plan review approval is permitted by the county's land use regulations.

Love's and the county moved to dismiss petitioner's appeal, contending that the extension decision was not a "land use decision" subject to LUBA's review authority,[4] and that, if it was, petitioner's interests were not "adversely affected" by that decision. Petitioner responded that the extension decision was a "land use decision." It also contended that its interests would be adversely affected by the proposed development, and submitted evidence that its businesses would suffer "an immediate and significant loss in revenue, higher fuel costs and a potential loss in labor force" by the operation of Love's travel center. Petitioner also argued that it was

"adversely affected by the planning director's decision given its extensive involvement in the Site Plan Review Approval process and appeals, an approval the decision improperly seeks to extend. [Petitioner] already established standing to challenge the Site Plan Review Approval and expended substantial resources pursuing these challenges. A decision to extend that very same approval, notwithstanding the lack of any extension language in MCZO 4.165(C), clearly adversely affects an interest personal to [petitioner]."

(Citation omitted.)

LUBA determined that, although the extension decision was a "land use decision," petitioner had failed to prove that it was adversely affected by the decision. LUBA reasoned:

---

[4] ORS 197.015(10)(a) defines "land use decision" to include a "final decision or determination made by a local government *** that concerns the *** application of *** [a] land use regulation." The extension decision involved the application of the county's zoning ordinances. ORS 197.015(10)(b)(A) excludes from the definition of "land use decision" a "decision of a local government [that] is made under land use standards that do not require interpretation or the exercise of policy or legal judgment." The parties disagree about whether the extension decision involved any uncertain application of standards.

"[P]etitioner has failed to establish that it is 'adversely affected' within the meaning of ORS 197.830(3). Petitioner does not allege any adverse physical effect to its properties from the county's decision to extend the site plan review approval. The only adverse effect petitioner alleges is economic harm to petitioner as a business operator from intervenor's business operations that petitioner argues include lower fuel prices than petitioner's stations, and aggressive marketing and pricing practices. \* \* \* Such allegations do not amount to a sufficient pleading of 'adverse effect' within the meaning of ORS 197.830(3).

"Petitioner also argues that it is 'adversely affected' by the Extension Decision because of its 'extensive involvement' in the county's original decision to approve intervenor's site plan. \* \* \* However, petitioner does not dispute that the Extension Decision is a different decision than the 2014 site plan review approval decision. The statutes that confer standing to appeal to LUBA require a petitioner to establish that it has standing to appeal each decision that is made by a local government. The fact that a party may have appeared before the local government in a separate proceeding on a different application does not establish that that party is 'adversely affected,' within the meaning of ORS 197.830(3), by a different, albeit related, decision on a different application."

On review, petitioner contends that LUBA erred in construing "adversely affected" in ORS 197.830(3) to mean affected solely by the adverse physical effects of the proposed development. Petitioner argues that the term "adversely affected" in a predecessor statute to ORS 197.830 was construed broadly by the Supreme Court in *Jefferson Landfill Comm. v. Marion Co.*, 297 Or 280, 686 P2d 310 (1984), and that the same broad meaning should be applied to the use of the term in ORS 197.830(3).

In *Jefferson Landfill Comm.*, the petitioners appealed a conditional use permit to allow the siting of a landfill to LUBA. At that time, under Oregon Laws 1979, chapter 772, section 4(3), *amended by* Oregon Laws 1981, chapter 748, section 35 (section 4(3)),[5]

---

[5] Section 4(3) was repealed by Oregon Laws 1983, chapter 827, section 59.

"[a]ny person who has filed a notice of intent to appeal as provided in subsection (4) of this section may petition the board for review of a quasi-judicial land use decision if the person:

"(a)   Appeared before the local government or special district governing body or state agency orally or in writing; and

"(b)   Was a person entitled as of right to notice and hearing prior to the decision to be reviewed or was a person whose interests are adversely affected or who was aggrieved by the decision."

The Supreme Court explained its understanding of the meaning of "adversely affected" for that type of land use decision:

"In the context of section 4(3), 'adversely affected' means that a local land use decision impinges upon the petitioner's use and enjoyment of his or her property or otherwise detracts from interests personal to the petitioner. Examples of adverse effects would be noise, odors, increased traffic or potential flooding."

297 Or at 283.

The court then contrasted "adversely affected" standing with standing as a result of being "aggrieved" by the decision. The court defined "aggrieved," for purposes of the review statute:

"'A person whose interest in the decision has been recognized by the body making a quasi-judicial decision and who has appeared and asserted a position on the merits as an interested person, rather than only as a source of information or expertise, can be "aggrieved" by an adverse decision within the meaning of section 4(3). * * * [T]o be "aggrieved" a person must be more than abstractly dissatisfied with the outcome after the fact. The decision must be contrary to the request or other position that the person espoused during the proceeding.'"

*Id.* at 284 (quoting *Benton County v. Friends of Benton County*, 294 Or 79, 89, 653 P2d 1249 (1982)). The court concluded that the petitioners were "aggrieved" and had standing to appeal to LUBA because they had "appeared before

the local decision-making body; they effectively were recognized as interested persons by the local body; they testified on the merits; and the decision made was contrary to the position they asserted." *Id.* at 287.

Here, the parties assume that the type of adverse effect required for standing under the provision at issue in *Jefferson Landfill Comm.* will satisfy the standing requirement of ORS 197.830(3). The parties differ in their application of the definition of "adversely affected" set out in *Jefferson Landfill Comm.* Petitioner suggests that the court referenced two types of adverse effects, physical effects that "impinge[] upon [a] petitioner's use and enjoyment of his or her property," and other, nonphysical (including economic) effects that "otherwise detract[] from interests personal to [a] petitioner." Petitioner asserts that its economic loss that would result from Love's operation of a travel center "otherwise detracts" from its "personal interests" in maximizing economic gain. Love's and the county argue that both types of adverse effects are physical in nature and related to a property interest, as shown by the later reference in the *Jefferson Landfill Comm.* definition to "[e]xamples of adverse effects" as being "noise, odors, increased traffic or potential flooding." Thus, Love's and the county argue that the economic effects of the proposed development do not qualify petitioner as "adversely affected" under ORS 197.830(3).

We do not share the parties' assumption that the types of adverse effects referenced in section 4(3) (for a "quasi-judicial land use decision") are the same type of adverse effects required to obtain standing under ORS 197.830(3) (for a nonadjudicative decision made "without providing a hearing"). Those different types of land use decisions produce different effects. Both section 4(3) and ORS 197.830(3) require that a person seeking to appeal be "adversely affected by the decision." We construe "by the decision" to mean resulting from the operation of the decision. The term "by" includes

"**4a** : through the means or instrumentality of * * * **b** : through the direct agency of * * * **d** : through the work or operation of * * * **f** : in consequence of : as a result of : THROUGH."

*Webster's Third New Int'l Dictionary* 307 (unabridged ed 2002). Thus, a person is "adversely affected by the decision" when the person is affected in an adverse way by the operation of the decision.

A person is adversely affected by a decision that authorizes a land use, as was the case in *Jefferson Landfill Comm.*, when the operation of the allowed land use impinges upon that person's property or personal interests. Generally speaking, a decision to authorize a land use is made after providing a public hearing.[6] On the other hand, when the decision under review is not a use authorization, but instead is a decision made without a public hearing under ORS 197.830(3), a person is adversely affected by the decision when the decision either applies to the person or directly affects the person's interests in an adverse way.

The decision at issue in this case was a county decision interpreting its ordinance to allow an extension of time for implementation of a site review plan and to extend that time for Love's site review plan. Petitioner has not shown that the county decision applies to it or that its personal or property interests are directly affected in any way by the ordinance interpretation or the timing of Love's implementation of the site review plan. Even assuming, for the sake of argument, that the extension decision is a reauthorization of the site plan itself, petitioner has not shown how its interests are directly affected by the approved design (as opposed to the operation) of the proposed travel center. Finally, while petitioner's status as a past participant in the site review plan approval proceedings and dissatisfaction with the modification of that decision might arguably qualify it as "aggrieved" by the extension decision, ORS 197.830(3) does not confer standing on aggrieved persons. Mere dissatisfaction with a land use decision is not an adverse effect under ORS 197.830(3).

Accordingly, we conclude that petitioner's interests were not shown to be adversely affected by the extension

---

[6] ORS 215.401 to 215.416 (for counties) and ORS 227.160 to 227.178 (for cities) require local governments to take action on a "permit" (defined to mean a "discretionary approval of a proposed development of land," ORS 215.402(4); ORS 227.160(2)) following a noticed public hearing and by a written justification.

decision, and LUBA did not err in dismissing the appeal for that reason.[7]

Affirmed.

---

[7] In its brief, Love's cross-assigns error to LUBA's determination that the extension decision was a "land use decision" that was subject to review under ORS 197.830(3). In light of our disposition of petitioner's appeal, we need not determine whether Love's must file a petition for review under ORS 197.850(3)(b) to obtain that review or, if it is justiciable, the merits of the cross-assignment of error.