No. 919      October 22, 2025      383

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

REDSIDE RESTORATION PROJECT ONE, LLC;
William Buchanan; Elizabeth Buchanan;
Keystone Cattle & Performance Horses, LLC;
*Petitioners,*
*and*

Lori Anderson JOHNSON,
Richard Del Johnson, Kelsey Nonella,
Pamela Mayo Phillips,
Tim W. Phillips, and Paul Lipscomb,
*Intervenors-Petitioners below,*

*v.*

DESCHUTES COUNTY;
710 Properties, LLC; Charles Thomas; and Robert Turner,
*Respondents.*

Land Use Board of Appeals
2024082;
A187729 (Control), A187760

1000 FRIENDS OF OREGON,
*Petitioner,*
*and*

William BUCHANAN;
Elizabeth Buchanan;
and Keystone Cattle & Performance Horses, LLC,
*Intervenors-Petitioners below,*

*v.*

DESCHUTES COUNTY;
710 Properties, LLC; Charles Thomas; and Robert Turner,
*Respondents.*

Land Use Board of Appeals
2024083;
A187727

CENTRAL OREGON LANDWATCH,
*Petitioner*
*and*

William BUCHANAN;
Elizabeth Buchanan;
and Keystone Cattle & Performance Horses, LLC,
*Intervenors-Petitioners below,*

*v.*

DESCHUTES COUNTY;
710 Properties, LLC; Charles Thomas; and Robert Turner,
*Respondents.*

Land Use Board of Appeals
2024085

Argued and submitted July 30, 2025; on respondents 710 Properties, LLC, Charles Thomas, and Robert Turner's motion to strike filed July 31, 2025, and petitioner Redside Restoration Project One, LLC's response filed August 6, 2025.

Ezra Hammer argued the cause for petitioner Redside Restoration Project One, LLC. Also on the briefs were James D. Howsley and Jordan Ramis PC.

F. Blair Batson argued the cause for petitioners William Buchanan, Elizabeth Buchanan, Keystone Cattle & Performance Horses, LLC, and 1000 Friends of Oregon. Also on the brief for petitioners William Buchanan, Elizabeth Buchanan, Keystone Cattle & Performance Horses, LLC was John D. Butterfield. Also on the brief for petitioner 1000 Friends of Oregon was Eve Goldman.

Carol MacBeth argued the cause and filed the brief for petitioner Central Oregon LandWatch.

J. Kenneth Katzaroff argued the cause for respondents 710 Properties, LLC, Charles Thomas, and Robert Turner and Deschutes County. Also on the briefs were Sara Kobak and Schwabe, Williamson & Wyatt, P.C.; David Doyle and Stephanie Marshall for Deschutes County.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief *amicus curiae* for Land Conservation and Development Commission.

Samantha J. Bayer, David J. Hunnicutt, and OPOA Legal Center filed the brief *amicus curiae* for Oregon Property Owners Association.

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

O'CONNOR, J.

Motion to strike granted; affirmed.

**O'CONNOR, J.**

In separate petitions, petitioners Redside Restoration Project One, LLC (Redside), 1000 Friends of Oregon (1000 Friends), Central Oregon LandWatch (LandWatch), and William and Elizabeth Buchanan (the Buchanans) seek judicial review of a final order of the Land Use Board of Appeals (LUBA). LUBA's order upheld Deschutes County's approval of an application by applicant 710 Properties, LLC to redesignate a 710-acre tract of land (the subject property) from agricultural to rural residential exception area (RREA) and to rezone the subject property from exclusive farm use (EFU) to rural residential (RR-10) use.[1] Because we affirm LUBA's order, we do not address applicant's conditional cross-assignment of error. The redesignation and rezoning changes would allow applicant to divide the property into 71 10-acre residential lots. The Land Conservation and Development Commission (LCDC) has submitted an *amicus* brief supporting the Buchanans' position, and OPOA Legal Center has submitted an *amicus* brief supporting the applicant's position. For the reasons explained in this opinion, we affirm LUBA's order.

## I.  BACKGROUND

This is the second time that disputes relating to the rezoning of the subject property have come before us. In *Central Oregon Landwatch v. Deschutes County*, 330 Or App 321, 543 P3d 736 (2024) (*Landwatch II*), we affirmed LUBA's order remanding the county's determination that the applicant's 710-acre tract of range land did not meet the definition of agricultural land under Goal 3 of Oregon's Statewide Planning Goals[2] and OAR 660-033-0020(1)(a). LUBA's order required the county to consider on remand whether

---

[1] Respondents filed a motion to strike page four, line 12, through page nine, line 11, of petitioner Redside's answering brief to applicant's cross-assignment of error. Those pages include discussion of other issues outside the scope of the cross-assignment of error, which violates Rule 4.66(1)(c) of the Oregon Rules of Appellate Procedure (prohibiting reply briefs on judicial review of a LUBA decision). We grant the motion.

[2] Goal 3, set out in OAR 660-015-0000(3), is a directive "[t]o preserve and maintain agricultural lands" and describes that statewide land use goal in part as follows:

"Agricultural lands shall be preserved and maintained for farm use, consistent with existing and future needs for agricultural products, forest and

the subject property's resource designation and zoning were "necessary" to permit "farm practices" on "adjacent or nearby lands" under the pertinent statutes and regulations. *Central Oregon Landwatch v. Deschutes County*, LUBA Case Nos 2023-006/009 (Jul 28, 2023) (*Landwatch I*). The remand order also required the county to consider whether the subject property was "suitable for farm use" if it was used in conjunction with adjacent or nearby lands. *Id.*

In our opinion affirming LUBA's remand order, we explained that LUBA correctly concluded that "consideration of whether land is 'agricultural land' under OAR 660-033-0020(1)(a)(C) must include consideration of whether the land's resource designation and zoning is 'necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands.'" *Landwatch II*, 330 Or App at 333 (quoting OAR 660-033-0020(1)(a)(C); footnote omitted). We also agreed with LUBA that the rule creates a "high standard":

> "[W]e do not understand land to be agricultural land under OAR 660-033-0020(1)(a)(C) merely because its designation as such would merely be 'useful' or 'desirable' for nearby farm practices. Rather, for 'land' to be agricultural land under OAR 660-033-0020(1)(a)(C), that land, considering its resource designation and zoning, must truly be necessary to adjacent and nearby farm practices."

*Id.*

LUBA specifically limited the county's decision on remand to four considerations. First, LUBA remanded for the county to consider "the ability to use the subject property for farm use in conjunction with other property, including the [Redside] property," without "limit[ing] its review to the profitability of farm use of the subject property as

---

open space and with the state's agricultural land use policy expressed in ORS 215.243 and 215.700.

"USES

"Counties may authorize farm uses and those nonfarm uses defined by commission rule that will not have significant adverse effects on accepted farm or forest practices.

"IMPLEMENTATION

"Zoning applied to agricultural land shall limit uses which can have significant adverse effects on agricultural and forest land, farm and forest uses or accepted farming or forest practices."

an isolated unit." Second, LUBA remanded for the county to consider "the ability to import feed for animals," without "limit[ing] its consideration to the raising of animals where adequate food may be grown on the subject property." Third, LUBA remanded for the county to consider "whether the subject property is suitable for farm use as a site for construction and maintenance of farm equipment." Fourth, LUBA directed the county to "consider the evidence and adopt findings, addressing the impacts of redesignation of the property related to water, wastewater, and traffic and whether retaining the property's agricultural designation is necessary to permit farm practices on adjacent or nearby lands."

On remand, the county adhered to its original determination and issued a post-acknowledgement plan amendment changing the comprehensive plan designation of the applicant's 710-acre tract from agricultural land to RREA and rezoning the tract from EFU to RR-10. LUBA affirmed the county's order. The petitions on judicial review raise multiple arguments challenging LUBA's order. Following a brief overview of governing law, we address the arguments in each petitioner's brief in turn. In each section, we include the facts necessary to understanding our resolution of the arguments discussed in that section.

A.   *Statutory and Regulatory Context*

"The legislature's primary statement of agricultural land use policy is contained in ORS 215.243 \*\*\*." *Stop the Dump Coalition v. Yamhill County*, 364 Or 432, 441-42, 435 P3d 698 (2019). It provides, in pertinent part, that "[t]he preservation of a maximum amount of agricultural land is necessary to the conservation of the state's economic resources \*\*\*." ORS 215.243(2). EFU-zoned land "shall be used exclusively for farm use," unless an exception applies. ORS 215.203(1). The legislature has defined "farm use" as "the current employment of land for the primary purpose of obtaining a profit in money" by engaging in a list of activities. ORS 215.203(2)(a). The LCDC has enacted administrative rules that implement land use statutes, including OAR 660-033-0020(1)(a), which defines agricultural lands:

"'Agricultural Lands' as defined in Goal 3 includes:

"* * * * *

"(B)   Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices; and

"(C)   Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands."

In that definition, LCDC incorporated the statutory definition of farm use and listed other factors for the local government to consider when determining what is agricultural land. Additionally, OAR 660-033-0030(3) requires the consideration of "nearby and adjacent land" when determining whether land is agricultural land:

"Goal 3 attaches no significance to the ownership of a lot or parcel when determining whether it is agricultural land. Nearby or adjacent land, regardless of ownership, shall be examined to the extent that a lot or parcel is either 'suitable for farm use' or 'necessary to permit farm practices to be undertaken on adjacent or nearby lands' outside the lot or parcel."

B.   *Summary of the Petitions*

   1.   *Redside Restoration*

      Redside raises two assignments of error. In its first assignment of error, Redside asserts that the county's decision was invalid and must be vacated and remanded under ORS 215.422(3),[3] because a Deschutes County commissioner failed to disclose *ex parte* contacts received during a public

---

[3]  ORS 215.422 provides, in part:

   "(3) No decision or action of a planning commission or county governing body shall be invalid due to *ex parte* contact or bias resulting from *ex parte* contact with a member of the decision-making body, if the member of the decision-making body receiving the contact:

   "(a) Places on the record the substance of any written or oral *ex parte* communications concerning the decision or action; and

   "(b) Has a public announcement of the content of the communication and of the parties' right to rebut the substance of the communication made at the

meeting of the LCDC. In its second assignment of error, Redside asserts that LUBA mistakenly interpreted OAR 660-033-0020(1)(a)(B) and (C) when it evaluated the impact that redesignation and rezoning would have on groundwater. We conclude that LUBA's order was not unlawful in substance. First, the contacts at the LCDC hearing were not *ex parte* contacts or communications under LUBA's definition of *ex parte*, and Redside does not challenge LUBA's definition. Second, LUBA correctly stated and applied the substantial evidence standard when it evaluated the impact that the development would have on groundwater. Accordingly, we reject Redside's assignments.

   2.   *1000 Friends*

      LUBA ruled that 1000 Friends had waived its argument that OAR 660-033-0020(1)(a)(C) requires that the county evaluate potential new farm practices on nearby and adjacent lands. On review, 1000 Friends argues that LUBA erred in concluding that 1000 Friends had waived its argument. We agree with LUBA that 1000 Friends waived the argument under the principles of waiver established in *Beck v. City of Tillamook*, 313 Or 148, 831 P2d 678 (1992), because it could have been, but was not, raised on the first appeal to LUBA or to the county on remand.

   3.   *Central Oregon LandWatch*

      LandWatch raises four assignments of error. It argues in its first two assignments of error that LUBA erred by misconstruing and misapplying the substantial evidence standard. In its third and fourth assignments of error, LandWatch argues that LUBA misinterpreted the meaning of "nearby or adjacent" under OAR 660-033-0030(3). We conclude that LUBA properly articulated and applied the substantial evidence standard and accordingly reject LandWatch's first and second assignments of error. Additionally, we agree with LUBA that LandWatch waived its argument regarding which properties the county should

---

first hearing following the communication where action will be considered or taken on the subject to which the communication related.

   "(4) A communication between county staff and the planning commission or governing body shall not be considered an *ex parte* contact for the purposes of subsection (3) of this section."

have evaluated for conjoined use, because that was resolved or could have been resolved in *Landwatch I*. Accordingly, we reject LandWatch's four assignments of error.

### 4.   *The Buchanans*

The Buchanans raise two assignments of error. They argue in their first assignment of error that LUBA erred when it gave undue weight to the consideration of profitability in affirming the county's interpretation and application of Goal 3. In their second assignment, the Buchanans argue that LUBA misinterpreted Goal 3 in its application of the objective "reasonable farmer test" to evaluate profitability. LCDC makes similar arguments in its *amicus* brief.[4] We conclude that LUBA did not misconstrue the definition of agricultural land, and therefore reject the Buchanans' first assignment of error. LUBA correctly applied the substantial evidence standard in reviewing the county's determination of profitability under the reasonable farmer test. Additionally, the parties waived the challenge to the application of an objective reasonable farmer standard because LUBA applied that standard in *Landwatch I* and no parties challenged that standard on judicial review in *Landwatch II*. Accordingly, we reject the Buchanans' two assignments of error and LCDC's arguments.

## II.   STANDARD OF REVIEW

We review a LUBA order for whether it is unlawful in substance. ORS 197.850(9)(a). A LUBA order is unlawful in substance "if it represents a mistaken interpretation of the applicable law." *Kine v. Deschutes County*, 313 Or App 370, 372, 496 P3d 1136 (2021) (internal quotation marks omitted).

Some of petitioners' arguments require us to interpret statutes and administrative rules. We interpret statutes to identify the legislature's intent by examining the

---

[4] LCDC argues that LUBA's "objective test" for whether land is "agricultural land" because it is "suitable for farm use" is inconsistent with ORS 215.203(2)(a), ORS 215.243(2) and OAR 660-033-0020(1)(a)(B). Instead, LCDC argues, whether a person has the "primary purpose of obtaining a profit in money" from their use of "the land is a subjective test, that can be satisfied by evidence that an actual farmer intends to currently use the land for the primary purpose of obtaining a profit in money."

text of the statute in context and consulting any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). We interpret administrative rules to "'divine the intent of the rule's drafters' by considering 'the text of the rule in its regulatory and statutory context.'" *Landwatch II*, 330 Or App at 739-40 (quoting *Shaefer v. Marion County*, 318 Or App 617, 620, 509 P3d 718 (2022)).

Others of petitioners' arguments challenge LUBA's review of the county's decision for substantial evidence. When a party before LUBA challenges a county's factual finding as unsupported by substantial evidence, "LUBA considers all the evidence in the entire record *** and determines whether a reasonable person could make that finding." *Citizens for Responsibility v. Lane County*, 218 Or App 339, 345, 180 P3d 35 (2008) (citation omitted). We first review whether LUBA properly stated and applied that standard of review. *Id*. If it did, then "we would reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.'" *Id*. (quoting *Younger v. City of Portland*, 305 Or 346, 359, 752 P2d 262 (1988)).

## III. ANALYSIS

### A. *Petitioner Redside's First Assignment of Error*

In its first assignment of error, Redside asserts that the county's decision is invalid and must be vacated and remanded under ORS 215.422(3), because DeBone, a Deschutes County commissioner, failed to disclose alleged *ex parte* communications that occurred at a 2022 Department of Land Conservation and Development (DLCD) hearing, at which DeBone testified at. Redside argues that DeBone violated ORS 215.422(3) by failing to disclose those communications at the county's July 24, 2024, public hearing, where the county commissioners deliberated after LUBA's remand order. When the county maintained its decision and Redside again challenged the decision, Redside raised the *ex parte* contacts argument to LUBA, and LUBA rejected it. Redside contends that LUBA's order is unlawful in substance, because it misinterpreted and misapplied the prohibition

against *ex parte* contacts in land use matters. Respondents argue that LUBA correctly concluded that the communications received by DeBone at the LCDC hearing did not constitute *ex parte* contacts. We affirm LUBA's conclusion that the communications did not constitute *ex parte* contacts under LUBA's definition, and Redside does not challenge LUBA's definition on judicial review.

We briefly provide an overview of the context for the alleged *ex parte* communications. After the county initially approved the rezoning of the subject property in a 2022 vote by the Deschutes County commissioners, DLCD sought to appeal the order to challenge the county's decision. DLCD needed LCDC's authorization to appeal, and LCDC held a public hearing to consider whether to authorize the DLCD appeal.

Redside argues that five *ex parte* communications occurred at that DLCD hearing. The hearing was open to the public and recorded. Applicants do not dispute that the communications occurred. Instead, they argue that LUBA correctly concluded they did not constitute *ex parte* communications in the circumstances of this case. The first communications are statements from the parties' attorneys at the hearing. Second, LCDC Commissioner Boyer asked DeBeone questions and DeBone responded. Third, applicant's attorney described the physical features of the subject property. Fourth, a DLCD staff person made statements to DeBone after the hearing, and those statements were not recorded. Fifth, a statement by a DLCD staff member Jinings regarding the role of profitability in the county's decision.

After deliberation, LCDC authorized the DLCD appeal. On DLCD's appeal, as noted above, LUBA reversed the county's order and remanded it for reconsideration. During the first county hearing on remand, on July 24, 2024, DeBone did not disclose that he had appeared at the LCDC hearing. He did subsequently disclose that appearance at a county hearing in September 2024, when the county maintained its decision to rezone the property, but he did not describe the details of his appearance.

A litigant in a land use matter is entitled to a "tribunal which is impartial in the matter—*i.e.*, having had no prehearing or *ex parte* contacts concerning the question at issue." *Fasano v. Washington Co. Comm.*, 264 Or 574, 588, 507 P2d 23 (1973). Shortly after *Fasano*, the legislature enacted ORS 215.422(3) to address when an *ex parte* contact invalidates a land use decision. ORS 215.422(3) provides that "[n]o decision or action of a planning commission or county governing body shall be invalid due to *ex parte* contact or bias resulting from *ex parte* contact with a member of the decision-making body, if the member of the decision-making body receiving the contact" places the communication on the record and provides an opportunity for the opposing parties to rebut it "at the first hearing following the communication where action will be considered or taken on the subject to which the communication related." The legislature did not define "*ex parte* contact" or "*ex parte* communication." The parties appear to agree that if DeBone had *ex parte* contacts at the LCDC hearing, then he did not comply with the disclosure process in ORS 215.422(3).

LUBA has defined the term *ex parte* communication for use in its orders and opinions:

> "An *ex parte* communication is a communication between a party and a decision-maker, made outside the hearing process, concerning a decision or action before the decision-maker."

*Oregon Shores Conservation Coalition v. Coos County*, 81 Or LUBA 839, 846 (2020). Additionally, in applying *Fasano*, LUBA has required a showing that the *ex parte* contacts were relevant to the issues before the local governmental body:

> "[I]n order to provide a basis for remand based on *ex parte* contacts, there must be some indication that the communication had something to do with the factual determinations or legal standards that govern approval or denial of the application."

*Link v. City of Florence*, 58 Or LUBA 348, 353 (2009).

Redside does not challenge LUBA's definition of *ex parte* communication. Redside argues that LUBA

misapplied that definition when it erroneously concluded that the communications received by DeBone did not concern factual determinations or legal standards that would govern the county's decision on the application. Before LUBA, Redside argued that the communications that DeBone received through his appearance at the LCDC hearing concerned the factual and legal issues before the county on remand from LUBA and were therefore *ex parte*. LUBA rejected that argument, concluding that the communications that Redside cited did not constitute *ex parte* communications under ORS 215.422(3), primarily because the legal and factual issues discussed at the LCDC hearing were outside the scope of LUBA's remand to the county.

On judicial review, in its first assignment, Redside contends that there were five communications during the LCDC hearing that amounted to *ex parte* communications and that LUBA's rejection of its *ex parte* argument constitutes a mistaken application of ORS 215.422(3) that is unlawful in substance. In a cross-assignment of error, the applicant contends that LUBA erred in rejecting its arguments that *ex parte* communications are only those that are received by a decision-maker relating to a pending matter and, further, that communications received in the context of a public hearing are not *ex parte*. We do not reach the applicant's arguments on cross-assignment, because, as explained below, we affirm LUBA's conclusion that DeBone was not required to disclose the communications under ORS 215.422(3).

As to the first alleged *ex parte* communication, Redside argues that statements and arguments made at the LCDC hearing by legal counsel for DLCD and the applicant regarding the criteria for agricultural land had bearing on the county's determination on remand whether the property should remain agricultural land. Those statements included the lawyers' arguments related to an interpretation of the Supreme Court's opinion in *Wetherell v. Douglas County*, 342 Or 666, 683, 160 P3d 614 (2007). In that case, the court addressed how a county should evaluate the element of "profitability" when determining the "suitability" of land for "farm use" as defined in ORS 215.203(2)(a) and under OAR

660-033-0020(1)(a)(B). The court held that, "in determining whether land is 'suitable' for 'farm use' \*\*\* a local government may not be precluded from considering the costs or expenses of engaging in those activities." *Id.* at 680.

The attorneys at the LCDC hearing that DeBone attended differed in their views as to how the county should consider profitability in evaluating whether land was "suitable for farm use." DLCD's attorney argued that the law as to profitability was unsettled and that an appeal to LUBA would help to clarify the issue. The applicant's attorney argued that the law was settled and that the profitability of the subject property itself was one of the primary considerations in determining whether land was agricultural.[5] In Redside's view, the applicant's attorney incorrectly explained the law, and the discussion was an indirect *ex parte* communication to DeBone.

In its order, LUBA first rejected the applicant's contention that the requirement in ORS 215.422(3) for disclosure of *ex parte* communications did not apply to communications received during the LCDC hearing, because there was no matter pending before the county at the time the communications were received. LUBA explained that if the county matter was on review, remand was a foreseeable result, "and a decision-maker should be prepared to conduct hearings on remand consistent with ORS 215.422(3), including disclosure of *ex parte* communications received during the appellate phase of the case." Thus, LUBA concluded that it did not matter that there was no matter then pending before the county at the time of the communications.

LUBA then concluded that the arguments made by the applicant's attorneys to DeBone and the rest of the commission related only to a resolved issue of law. LUBA explained that the law clearly required a county to consider profitability when evaluating the use of the subject property in conjunction with nearby and adjacent properties.

---

[5] The applicant's counsel argued:

"And pretty clearly tells you that profitability is one of the main factors, and that indeed it is the land itself; the particular property that has to be able to support the agricultural use and that's important because it's different when you start to get into some issues about having a farm tract, which is not something that is at issue in this case."

Accordingly, LUBA concluded that issue could not have been, and indeed was not, at issue on remand to the county.

LUBA noted its definition of "*ex parte*" communication as

"a communication between a party and a decision-maker, made outside the hearing process*, concerning a decision or action before the decision-maker*[.]"

(Internal quotation marks omitted; emphasis added.) LUBA focused on whether the substance of the communications that DeBone received at the LCDC hearing had bearing on issues that might come before the county on a potential remand and therefore concerned a decision or action by the county. LUBA determined that the arguments by the attorneys involved issued that LUBA settled in *Landwatch I* and that this court affirmed in *Landwatch II*. Thus, LUBA concluded, the attorneys' argument could have had no bearing on the county's decision-making on LUBA's remand. Redside challenges that conclusion.

Redside does not challenge LUBA's definition of *ex parte* communications. Applicant's conditional cross-assignment of error challenges LUBA's definition, including calling into question LUBA's conclusion that statements heard by DeBone at the public hearing did not constitute *ex parte* communications. Because we affirm on Redside's assignment of error, we do not reach applicant's argument. We address only whether LUBA properly concluded that the communications received by DeBone at the LCDC hearing did not constitute *ex parte* contact or communications, as LUBA has defined those terms. We express no opinion about whether those definitions are consistent with ORS 215.422(3).[6]

_____

[6] We note that *ex parte* has been defined differently in other contexts. For example, in defining the term *ex parte* in the context of a lawyer disciplinary matter, the Oregon Supreme Court has cited the definition in *Black's Law Dictionary* 616 (8th ed 2004):

"'Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other, usu. for temporary or emergency relief.'"

*In re Hendrick*, 346 Or 98, 102, 208 P3d 488 (2009) (quoting *Black's* at 616).

We agree with LUBA that the legal issues discussed by the attorneys at the LCDC hearing had been settled by LUBA in its first order in *Landwatch I*. LUBA's remand to the county had specifically required the county to consider the profitability of the subject property in conjunction with use with other properties.[7] That issue was thus not open for determination by the county on remand from LUBA. *Beck*, 313 Or at 153. For that reason, we agree with LUBA that the attorneys' earlier disagreement on that point, prior to the first appeal to LUBA, could not have had bearing on the matter once it was on remand to the county and thus did not qualify as *ex parte* communication under LUBA's definition.

Redside also argues that the attorneys' arguments had bearing on other issues relating to profitability that would potentially have been before the county on remand. But Redside does not elaborate on how the attorneys' arguments, as heard by DeBone, might have had bearing on those asserted unsettled legal issues. We agree with LUBA that the communication between the attorneys at the LCDC hearing did not raise issues that might arise on remand concerning profitability and therefore did not constitute an *ex parte* communication that DeBone was required to disclose under ORS 215.422(3).

As to the second alleged *ex parte* communication, Redside argues that DeBone received an *ex parte* communication in the form of questions by LCDC Commissioner Boyer. Boyer asked DeBone whether studies had been done regarding the impact of the applicant's proposed development on surrounding farm properties, and DeBone provided a response. LUBA rejected Redside's contention that DeBone's response constituted an *ex parte* communication, explaining that an *ex parte* communication is one that is "received" by the member of the decision-making body rather than given.

---

[7] As discussed above, LUBA's remand stated:

"On remand, the board of commissioners must consider the ability to use the subject property for farm use in conjunction with other property, including the [Redside] property, and may not limit its review to the profitability of farm use of the subject property as an isolated unit. The board of commissioners must consider the ability to import feed for animals and may not limit its consideration to the raising of animals where adequate food may be grown on the subject property."

We agree with LUBA. The legislature in ORS 215.422(3) required a member of a decision-making body "receiving" an *ex parte* contact to comply with the disclosure process outlined in that subsection. The legislature in ORS 215.422(3) said nothing about when or where a member of a decision-making body may make statements about a pending land use matter. DeBone did not "receive" his own statement in response to Boyer's question, and ORS 215.422(3) did not apply to DeBone's statement. Additionally, we agree with LUBA that Boyer did not assert a factual or legal position that could have had any bearing on an issue to be decided by the county on remand by asking DeBone the question. Thus, under LUBA's definition of *ex parte* communication, ORS 215.422(3) did not require DeBone to disclose the exchange with Boyer.

As to the third alleged *ex parte* communication, Redside challenges a description of the physical features of the subject property by applicant's attorney that DeBone heard, in response to a question by Boyer:

"[This property] is unique. It is on a very steep elevated plateau and there is some irrigated agriculture uh to the northwest, but that is uh quite some distance off and an elevation change of something like 300 feet on pretty sheer cliff walls.

"And then on kind of the southeastern side, there are other properties that are in fact zoned EFU also. But almost every single one of them have received a non-farm dwelling approval and so they've actually been taken out of agricultural because the soils are so bad here."

LUBA wrote that the question was close but ultimately determined that the comments by applicant's attorney were not *ex parte* communications. The attorney's description of the property was consistent with the county's findings that were not disputed by Redside or at issue on remand from LUBA, LUBA explained. Thus, LUBA concluded, the physical characteristics described by applicant's attorney would not have had any bearing on an issue on remand.

Redside argues that the asserted facts "are clearly relevant to the profitability and suitability factors in OAR 660-033-0020(1)(a)(B) and (C)," which was the issue on

remand. Although that is correct in general, some factual issues had been settled prior to the remand. The physical description of the property was one of the settled issues. The description of the subject property provided by applicant's attorney concerned uncontested findings that had already been made by the county. Thus, the attorney's physical description of the subject property would not have had any bearing on the issues to be decided by the county on a potential remand, and they were not *ex parte* communications that DeBone had to disclose under ORS 215.422(3), based on LUBA's definition of the term.

As to the fourth alleged *ex parte* communication, Redside argues that an unrecorded communication that DeBone received from a DLCD staff person after the hearing constituted an *ex parte* communication. DeBone submitted an affidavit in which he said that the staff person told him that there were public funds available to provide the county with information about why DLCD's position was correct. Redside asserts that the staff person was vouching for the correctness of DLCD's position relating to profitability, and the statement thus meets LUBA's definition of an *ex parte* communication. We agree with LUBA that the staff person's offer to provide information about funding a study to show how DLCD was correct had no bearing on the issues before the county on remand.

Finally, Redside challenges as an *ex parte* communication a statement by DLCD's staff member, Jinings:

"[O]f course profitability counts if *** we didn't mention it in our comments I think it was we believe it was self-evident *** profitability means different things to different people[.]

"[T]here is pretty decent rangeland I mean capable of supporting you know one AUM [animal unit month] for five or ten acres is pretty good *** we believe it deserves protection."

(Brackets in original.) LUBA does not mention Jinings's statement in its opinion. Applicant responds that LUBA did not mention the statement because Redside did not argue before LUBA that Jinings's statement constituted an *ex parte* communication. Applicant is correct. We reject

the argument for that reason. *See Devin Oil Co. v. Morrow County*, 252 Or App 101, 113, 286 P3d 925 (2012) (holding that a party waives a challenge to a local government's decision when that challenge "could have been raised, but was not raised," in a party's appeal to LUBA).

To summarize, applying LUBA's definition of *ex parte* communications that Redside does not contest on judicial review, we agree with LUBA's conclusions that the communications received and statements made by DeBone were not *ex parte* communications that DeBone had to disclose under ORS 215.422(3). We therefore reject Redside's first assignment of error.

B.   *Petitioner Redside's Second Assignment of Error*

LUBA's original remand required the county to "consider the evidence of impacts on surrounding agricultural lands vis-à-vis water, wastewater, and traffic." On remand, the county was presented with evidence that 71 homes would reduce the aquifer slightly but that the reduction would have no appreciable effect on when nearby farms have to deepen wells or dig new wells because of the relatively small amount of water the homes would use. Specifically, there was evidence that 71 residential wells would draw at most 51-acre feet of water per year, which amounted to 0.0000182 percent of the annual recharge rate of the aquifer. The county relied on that evidence to find that the proposed development of 71 homesites on the subject property would have no impact on surrounding farmers' ability to irrigate.

Before LUBA, Redside argued that the county's determination that the impact of development of the subject property on irrigation of neighboring farms would be minimal was not supported by substantial evidence. Specifically, Redside argued that any reduction in the aquifer could require nearby farms to deepen irrigation wells. Redside argued that the county had failed to consider that cost, instead incorrectly relying on evidence of the cost of domestic well deepening, which would be much less costly.

LUBA responded that Redside misunderstood the county's decision. LUBA explained that "the county did not draw any conclusions regarding the cost of deepening

irrigation wells from the testimony regarding the cost of deepening a domestic well." And LUBA concluded that the county's finding that the impact on surrounding farms would be slight was supported by substantial evidence:

> "A reasonable fact—finder could conclude from the record that the impact of 71 domestic wells on the aquifer would not significantly hasten the day when irrigation wells must be deepened in any event."

On judicial review, Redside challenges both LUBA's conclusion that the county did not rely on the cost of deepening domestic wells and LUBA's conclusion that substantial evidence supported the county's finding that proposed residential development on the property would not "significantly hasten the day when irrigation wells must be deepened[.]" Redside notes that, in determining whether land is suitable for farming, OAR 660-033-0020(1)(a)(B) requires the county to consider the "existing and future availability of water for farm irrigation purposes." Redside further notes that OAR 660-033-0020(1)(a)(C) and OAR 660-033-0030(3) define agricultural land to include "[l]and that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands," and require consideration of the effect of zoning on nearby or adjacent land. Redside cites evidence before the county that the aquifer is declining and argues that water is finite. The increased draw on the aquifer from 71 residential homes necessarily will reduce the water available to surrounding farms for irrigation, Redside argues. Redside also argues that LUBA failed to consider the potential cost to adjacent farms of deepening irrigation wells should the development be built.

We reject Redside's arguments. As explained above, we review LUBA's substantial evidence review to determine whether LUBA properly stated and applied that standard of review. *Citizens for Responsibility*, 281 Or App at 345. If it did, then "we would reverse LUBA's decision only when there is no evidence to support the finding or if the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review.'" *Id.*

LUBA did consider evidence of the cost of well-deepening to surrounding farmers. It nonetheless concluded that substantial evidence supported the county's finding. LUBA correctly stated and supplied the substantial evidence standard of review. There is some evidence to support the finding. Finally, contrary to Redside's argument, the evidence in the record is not so at odds with LUBA's evaluation that we could infer that LUBA misunderstood or misapplied its scope of review. The county heard evidence that the additional water used by the 71 proposed residences would not appreciably reduce the aquifer. Although Redside disputes that evidence and disagrees with the county's reliance on it, our standard of review does not permit us to second-guess the county's factfinding.

Finally, Redside contends in its second assignment that LUBA legally erred in failing to address both the "risk of an [adverse] impact" from the rezoning of the subject property and the "cost of the impact" of the development on nearby and adjacent farms. Respondents argue that Redside waived the argument because it did not raise the argument to LUBA.

In this context, the concept of waiver derives from statutes that set out procedural requirements in land use cases. The Supreme Court interpreted those statutes in *Beck*. We summarize the statutes and the court's explanation of them in *Beck*, because they impact our resolution of many of the parties' arguments on judicial review.[8]

The legislature has made a policy choice "that time is of the essence in reaching final decisions in matters involving land use and that those decisions be made consistently with sound principles governing judicial review." ORS 197.805. The legislature enacted the statutes governing land

_____

[8] The legislature has renumbered the pertinent statutes since *Beck*. We cite to the current versions of the statutes. Since *Beck*, in 2023, the legislature deleted the phrase "shall be limited to those" in ORS 197.835(3) and added the phrase "The board may only review". Or Laws 2023, ch 551, § 3 (HB 3458 (2023)). The parties have not argued that the change alters the legislature's intent as interpreted in *Beck*. We have reviewed the text, context, and legislative history, and we have found no indication that the legislature intended to relieve parties of the preservation rules as explained in *Beck*. To the contrary, the legislative history shows that the legislature intended HB 3458 (2023) to tighten the preservation and law-of-the-case rules that apply in land use cases.

use decisions "to accomplish these objectives." *Id*. The statutes require a party to preserve issues for appeal to LUBA by raising them before the local decision-making body:

> "The following procedures shall govern the conduct of quasi-judicial land use hearings conducted before a local governing body, planning commission, hearings body or hearings officer on application for a land use decision and shall be incorporated into the comprehensive plan and land use regulations:

> "(1)   An issue which may be the basis for an appeal to the Land Use Board of Appeals shall be raised not later than the close of the record at or following the final evidentiary hearing on the proposal before the local government. Such issues shall be raised and accompanied by statements or evidence sufficient to afford the governing body, planning commission, hearings body or hearings officer, and the parties an adequate opportunity to respond to each issue."

ORS 197.797. Relatedly, with exceptions not applicable here, the statute provides that LUBA "may only review issues raised by any participant before the [county]." ORS 197.835(3).

The legislature has also directed LUBA to decide every issue properly before it at the first opportunity. LUBA "shall decide all issues presented to it when reversing or remanding a land use decision[.]" ORS 197.835(11)(a). That is, LUBA cannot decline to reach an issue even if has already decided to reverse or remand on a separate issue. As the Supreme Court has explained, ORS 197.835(11)(a) limits the "scope of the remand to those issues that require further exploration. Doing so can avoid redundant proceedings and thereby facilitate the" legislative policy expressed in ORS 197.805. *Beck*, 313 Or at 152.

Additionally, ORS 197.797(7) provides:

> "When a local governing body, planning commission, hearings body or hearings officer reopens a record to admit new evidence, arguments or testimony, any person may raise new issues which relate to the new evidence, arguments, testimony or criteria for decision-making which apply to the matter at issue."

"In other words, when the record is reopened, parties may raise new, unresolved issues that relate to new evidence." *Beck*, 313 Or at 153. As the Supreme Court summarized in *Beck*:

> "The logical corollary is that parties may not raise old, resolved issues again. When the record is reopened at LUBA's direction on remand, the 'new issues' by definition include the remanded issues, but not the issues that LUBA affirmed or reversed on their merits, which are old, resolved issues."

*Id.* (footnote omitted).

When a county reconsiders an issue on remand from LUBA "then a subsequent appeal to LUBA generally is limited" to the issues raised before the county during the hearing on reconsideration. *Id.* at 154. Thus, under *Beck*, "issues that LUBA decided in earlier proceedings, and upon which judicial review was not sought, are not subject to review in a judicial review of a subsequent LUBA order." *Griffin Oak Prop. Invest. v. City of Rockaway Beach*, 318 Or App 777, 794, 509 P3d 643 (2022) (internal quotation marks omitted)). Additionally, a party waives a challenge to a local government's decision when that challenge "could have been raised, but was not raised," in a party's first appeal to LUBA. *Devin Oil Co.*, 252 Or App at 113.

We agree that Redside waived the argument that LUBA erred in failing to address both risk of an adverse impact from the rezoning of the subject property and the cost of the impact of the development on nearby and adjacent farms by failing to raise the argument to LUBA. We therefore decline to address it.

C. *Petitioner 1000 Friends' Assignment of Error*

In its only assignment of error, petitioner 1000 Friends contends that LUBA erred in concluding that 1000 Friends had waived its argument that the county mistakenly evaluated only whether the subject property was necessary to continuing farm practices under OAR 660-033-0020(1)(1)(C), rather than potential new farm practices. We agree with LUBA that 1000 Friends waived its argument.

As the prior discussion shows, the scope of LUBA's remand and the arguments raised on remand determine whether 1000 Friends waived the argument it makes in this judicial review. Thus, we summarize the two county decisions in this case, the two appeals to LUBA, and the arguments and issues raised in each.

Before the county in 2022, DLCD had argued that "OAR 660-033-0020(1)(a)(C) requires an evaluation of 'farming and ranching practices that are associated with *existing and potential* farm uses in the surrounding area.'" (Emphasis added.) In its first appeal to LUBA, 1000 Friends argued that the county had misconstrued OAR 660-033-0020(1)(a)(C) and that the EFU zoning of a property is necessary to permit farm practices on adjacent and nearby lands under OAR 660-033-0020(1)(a)(C) if the impacts from the nonresource use of the land would prevent farm practices on adjacent or nearby lands. 1000 Friends did not make a specific argument to LUBA about *potential* farm practices on nearby and adjacent lands.

In its 2024 decision on remand from LUBA's order, the county described the issue on remand as whether "the [p]roperty's existing designation [is] 'necessary' to permit the continuance of farm practices on nearby and adjacent lands?" Before LUBA on appeal of the county's decision on remand, 1000 Friends argued that the county had mistakenly evaluated only the continuation of existing farm practices and should have also evaluated the establishment of potential new farm practices on nearby and adjacent lands. 1000 Friends also argued that that issue was not waived, because 1000 Friends could not have reasonably anticipated the county's interpretation of OAR 660-033-0020(1)(a)(C) as limited to existing farm practices.

In its order on review, LUBA cited *Beck*, *Devin Oil Co.*, and *Currie v. Douglas County*, 308 Or App 235, 481 P3d 427 (2020), as authority for its conclusion that 1000 Friends had waived its argument under the "law of the case." In *Griffin Oak Prop. Invest.*, we explained that "the waiver principle articulated in *Beck* is a variation on the law of the case doctrine." 0 Or App at 794. The law of the case doctrine provides that "issues that LUBA decided in earlier proceedings,

and upon which judicial review was not sought, are not subject to review in a judicial review of a subsequent LUBA order." *Id.* (internal quotation marks omitted). That doctrine draws on the same principles as the law of the case doctrine that applies to litigation in a circuit court. A trial court must follow decisions made on appeal in the same litigation, and we must adhere to our prior decisions in a subsequent appeal in the same litigation. *Gould v. Deschutes County*, 272 Or App 666, 686, 362 P3d 679 (2015). So too in a land use case. An issue decided by LUBA that becomes final because a party did not seek judicial review of that issue may not be challenged on judicial review of a subsequent LUBA order.

The waiver principle explained in *Beck* is related but distinct from the law of the case doctrine. A party to a land use decision waives an issue by failing to raise it at the earliest opportunity. *Devin Oil Co.*, 252 Or App at 113; *Beck*, 313 Or at 153-54. That is a case-by-case inquiry akin to the appellate courts' rules on preserving claims of error on appeal. *See State v. Skotland*, 372 Or 319, 326-27, 549 P3d 534 (2024). Sometimes, the earliest opportunity to raise an issue will be before the county. Sometimes, it may be on appeal to LUBA. *See Devin Oil Co.*, 252 Or App at 113 (holding that a petitioner's challenge to a limitation imposed by the county was waived because the challenge "*could have been*, but was not raised, in the petitioner's first appeal in [the] case[.]" (Emphasis added.)).

The point, as explained in *Beck*, is that an issue could be waived without the law of the case doctrine specifically applying. A party may not have raised that issue to the county or to LUBA, and LUBA may not have addressed the issue. If a party then raised the issue for the first time on judicial review before us, there would be no prior decision subject to the law of the case doctrine. However, we might still conclude that the issue had been waived and refuse to reach it under the principles of waiver. Whether a party to a land use decision waived an issue involves a case-specific evaluation. *Beck*, 313 Or at 154. Accordingly, we summarize the records below that are relevant to 1000 Friends' argument about potential farm practices on nearby and adjacent lands.

The county's 2022 decision had included three tables as part of its findings regarding "[l]and that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands." Those tables listed surrounding EFU-zoned properties, their current farm uses, and their potential farm practices. The county found that none of those surrounding EFU properties needed the subject property to conduct those farm practices:

**EFU Properties to the West (South to North)**

| Tax Map, Lot and Size | Farm Use | Potential Farm Practices | Need Subject Property? |
|---|---|---|---|

The county included those tables again in its 2024 decision, with its findings that the subject property was not "'necessary' to permit the *continuance* of farm practices on nearby and adjacent lands":

**EFU PROPERTIES TO THE NORTH AND WEST (SOUTH TO NORTH)**

| Tax Map, Lot and Size | Farm Use | Potential Farm Practices | EFU Zoning Necessary for Farm Practices to Continue? |
|---|---|---|---|

In its 2024 decision, the county referred to those agricultural lands as the "study area." According to LUBA, that inventory of farm uses and practices inventoried only existing uses and practices, and no party challenged the adequacy of the inventory or argued that the inventory was inadequate in failing to refer to potential uses on nearby and adjacent land.

As discussed, in *Landwatch I* and *Landwatch II*, 1000 Friends challenged the adequacy of the county's 2022 findings on the ground that the county failed to evaluate whether the EFU zoning was necessary for farm practices to be undertaken on nearby and adjacent lands. We agree with LUBA, however, that 1000 Friends did not challenge which nearby and adjacent properties or which farm practices the county must evaluate, which had been defined in the included tables relied on by the county in its 2022 decision.

In 2024, on remand before the county, 1000 Friends did not argue that the county must evaluate potential new farm practices on nearby and adjacent land. Applicant

submitted exhibits, available to all parties, as part of their presentation at the July 24, 2024, county hearing for the decision on remand. The applicant's exhibits included the tables with the column heading "[is] EFU Zoning Necessary for Farm Practices to Continue?" The county later adopted the applicant's tables in its findings. 1000 Friends submitted a four-page memorandum on August 7, 2024, that focused on the potential development's impacts on existing nearby and adjacent farming operations. In the memorandum, 1000 Friends argued that "[t]he subject property's existing agricultural lands designation and zoning is necessary to permit the *continuation of ordinary and accepted farm practices* on adjacent and nearby agricultural lands." The memorandum did not include a challenge to the impacts of redesignation and rezoning on potential farm uses.

To excuse its failure to raise the challenge in 2022, 1000 Friends relies on the fact that the county's 2024 decision identified the information in the tables as the "study area" but did not do so in the 2022 decision. We disagree. The county evaluated the same properties and uses under both the 2022 and 2024 tables. *See Devin Oil Co.*, 252 Or App at 113 (explaining that "[t]he fact that the same limitation was applied through a different mechanism" did not alter the waiver analysis). And we see no reason why 1000 Friends could have not raised its argument about the development's impacts on potential farm uses until after the county changed the title to "study area."

In sum, we agree with LUBA that 1000 Friends waived its argument regarding potential farm uses under OAR 660-033-0020(1)(a)(C). The challenge could have been, but was not, raised in the first appeal to LUBA or to the county on remand. *See Beck*, 313 Or at 154.

D. *Petitioner LandWatch's First Assignment of Error*

In its first assignment of error, LandWatch asserts that LUBA's order was unlawful in substance in its review of the evidence evaluating whether the subject property could be used in conjunction with the adjacent Buchanan ranch for the primary purpose of obtaining a profit in money. The Buchanans have a 37-acre property that abuts the subject

property, and they are engaged in raising cattle. They presented evidence to the county that they could profitably incorporate the subject property into their existing enterprise. We conclude that LUBA properly articulated and applied the substantial evidence standard, and we accordingly reject LandWatch's first assignment of error.

As we explained above, if LUBA properly articulates the substantial evidence standard of review, we will affirm "unless there is no evidence to support the [county's] finding or the evidence in the case is 'so at odds with LUBA's evaluation that a reviewing court could infer that LUBA had misunderstood or misapplied its scope of review .'" *Stevens v. City of Island City*, 260 Or App 768, 772, 324 P3d 477 (2014) (quoting *Younger*, 305 Or at 359).

In its order, LUBA thoroughly discussed both whether the subject property could be used in conjunction with the Buchanan ranch for the primary purpose of obtaining a profit and the evidence the county reviewed to make that determination. LUBA concluded that LandWatch did "not demonstrate[ ] that the county's choice to rely on the applicant's evidence * * * is not supported by substantial evidence, or that, as a matter of law, a reasonable decision—maker could only rely on the Buchanans' testimony." LUBA's order correctly identified and applied the substantial evidence standard. Therefore, we reject LandWatch's first assignment of error.

E.   *Petitioner LandWatch's Second Assignment of Error*

In its second assignment of error, LandWatch asserts that LUBA's order was unlawful in substance in its review of the evidence because LUBA failed to adequately consider evidence of "identity" between the subject property and cattle grazing property in central Oregon. LandWatch did not argue to the county or to LUBA that the county must consider "identity" evidence. A party must raise an argument to LUBA in order to assert on review that LUBA erred when it did not address that argument. *Central Oregon LandWatch v. Deschutes County*, 326 Or App 439, 447, 533 P3d 67 (2023) (citing *Willamette Oaks, LLC v. City of Eugene*, 248 Or App 212, 225, 273 P3d 219 (2012)). Thus, we reject

LandWatch's second assignment of error because it was not preserved below.

F. *Petitioner LandWatch's Third Assignment of Error*

In its third assignment of error, LandWatch asserts that LUBA's order was unlawful in substance because it concluded that the county satisfied the requirement to examine "[n]earby and adjacent land, regardless of ownership," under OAR 660-033-0030(3), when the county only examined four nearby farms. As discussed above, OAR 660-033-0030(3) provides:

> "Goal 3 attaches no significance to the ownership of a lot or parcel when determining whether it is agricultural land. Nearby or adjacent land, regardless of ownership, shall be examined to the extent that a lot or parcel is either 'suitable for farm use' or 'necessary to permit farm practices to be undertaken on adjacent or nearby lands' outside the lot or parcel."

LUBA concluded that LandWatch's argument was waived under *Beck*, because "all potential challenges to the Study Area or which lands should be studied for conjoined use were resolved or could have been resolved in *Landwatch I*." LandWatch did not challenge on either the first appeal to LUBA or to the county on remand which nearby and adjacent properties the county must evaluate for conjoined use. LandWatch argues that the argument was not waived because the term "study area" was not used until the county's 2024 decision.

We agree with LUBA that LandWatch waived its argument regarding which properties the county should have evaluated for conjoined use for the same reasons we reject 1000 Friends' reliance on the term "study area" in the 2024 table to excuse raising challenges to the party's tables earlier. LUBA correctly concluded that all potential challenges to the study area or which lands should be studied for conjoined use were resolved or could have been resolved in *Landwatch I* and are thus waived under *Beck*.

G. *Petitioner LandWatch's Fourth Assignment of Error*

In its fourth assignment of error, LandWatch argues that LUBA's order was unlawful in substance in concluding

that a ranch that is less than a mile away from the subject property is not "nearby," as that term is used in OAR 660-033-0030(3). LandWatch challenges LUBA's statement that it had not established that the Johnson ranch was "nearby" under the circumstances of the case, even though it was only one mile away from the subject property. LUBA made that statement as an alternative basis for its decision, however, after deciding that LandWatch had waived its argument that the county should have included the Johnson ranch in the "study area" tables. We agree for the same reasons we conclude that LandWatch waived its other challenges to the land that the county should have considered. Accordingly, we reject LandWatch's fourth assignment of error.

H.   *Petitioner Buchanans' First Assignment of Error*

The Buchanans' assignments of error challenge the county's and LUBA's decisions about whether they or another person could use the subject property as farm or agricultural land for the purpose of obtaining a profit. As noted above, EFU zones "shall be used exclusively for farm use," unless an exception applies. ORS 215.203(1). The legislature defined "farm use" as "the current employment of land for the primary purpose of obtaining a profit in money," by engaging in a list of activities. ORS 215.203(2)(a). LCDC incorporated that definition of farm use into its definition of "agricultural land" for Goal 3:

"(1)(a)   'Agricultural Land' as defined in Goal 3 includes:

"(A)   Lands classified by the U.S. Natural Resources Conservation Service (NRCS) as predominantly Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon;

"(B)   *Land in other soil classes that is suitable for farm use as defined in ORS 215.203(2)(a)*, taking into consideration soil fertility; suitability for grazing; climatic conditions; existing and future availability of water for farm irrigation purposes; existing land use patterns; technological and energy inputs required; and accepted farming practices; and

"(C)   Land that is necessary to permit farm practices to be undertaken on adjacent or nearby agricultural lands."

OAR 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 (emphasis added). A local government may consider the "costs and expenses"—"profitability"—of engaging in the farm or agricultural activities listed in ORS 215.203(2) when deciding whether land is suitable for farm use. *Wetherell*, 342 Or at 680.

The Buchanans own a 37.51-acre parcel that adjoins the subject property. They operate a business that involves grazing cattle. They graze cattle on a separate parcel of irrigated pastureland about 20 miles from the subject property. In the winter, the cattle graze on the 37.51-acre pastureland that is adjacent to the subject property. They submitted a business plan to the county that proposed to use the subject property for seasonal grazing as part of an expansion of their business. They told the county that doing so would increase their profits. Respondents presented testimony that contested whether the Buchanans' plan could be profitable, based largely on evidence that the subject property was not suitable for grazing even when used in conjunction with the Buchanans' adjacent parcel. The county relied on respondent's evidence, not the evidence presented by the Buchanans.

In their first assignment of error, the Buchanans argue that LUBA misconstrued the definition of agricultural land under OAR 660-033-0020(1)(a)(B) by giving undue weight to considerations of profitability in determining whether land is suitable for farm use. We conclude that LUBA did not misconstrue the definition of agricultural land and, therefore, reject the Buchanans' first assignment of error.

On appeal to LUBA, the Buchanans argued that the county had "again" misconstrued the applicable law by overemphasizing profitability and improperly weighing the other considerations listed in OAR 660-033-0020 (1)(a)(B). However, LUBA disagreed that the "'undue weight' basis for remand" was premised on the county's failure to give "appropriate weight *** to consideration of profitability compared to the weight given other considerations." Instead, it understood that the remand was "directed at the county's exclusive focus on the subject property." LUBA concluded that, although the county's decision on remand did address profitability at length, "that differential presumably

correlates to the relative volume of evidence submitted," and the Buchanans did "not establish that the county erred in giving short shrift to other considerations, or otherwise elevated considerations of profitability over considerations listed in the rule."

The Buchanans argue that profitability is not one of the seven considerations that Goal 3 uses to determine whether land is suitable for farm use. However, as discussed above, OAR 660-033-0020(1)(a)(B) defines "agricultural land" to include "land that is suitable for farm use as defined in ORS 215.203(2)(a) taking into consideration" a number of other factors. ORS 215.203(2)(a) defines farm use to mean "the current employment of land for the primary purpose of obtaining a profit in money ***." Those provisions permit a county to consider profitability when deciding whether land is suitable for farm use. *Wetherell*, 342 Or at 683. Here, LUBA correctly understood the definition of agricultural land, and it correctly applied that definition when it evaluated the county's decision. Therefore, we conclude that LUBA's order was not unlawful in substance with regards to the Buchanans' first assignment of error.

I.  *Petitioner Buchanans' Second Assignment of Error*

In their second assignment of error, the Buchanans contend that LUBA's treatment of "profitability" is inconsistent with the intent to preserve farmland, as expressed in ORS 215.203 and in Goal 3. Specifically, we understand their argument to be that LUBA misconstrued the "profitability" requirement of OAR 660-033-0020(1)(a)(B) as requiring an inquiry into whether a farmer can make a profit from the land. The Buchanans argue that the correct inquiry is whether a farmer could undertake an agricultural use on the land for the purpose of obtaining a profit, not whether the farmer would, in fact, make a profit. But LUBA's order does not reflect that claimed misunderstanding of ORS 215.203(2)(a). The premise of the Buchanans' second assignment of error is incorrect, and we therefore reject the argument.

In responding to the Buchanans' arguments, LUBA characterized their argument as taking a position that a

local government must accept a neighboring farmer's statement that they intended to farm the land for the purposes of a making profit. The Buchanans argue here that LUBA mischaracterized their argument. Their argument, they explain, was that the "primary purpose" of profit as used in ORS 215.203(2)(a) relates to a person's intent to farm and that the county erred in disregarding the Buchanans' evidence of their intent to graze cattle on the land for the purpose of profit. The Buchanans contend that LUBA erred in failing to give sufficient weight to the objective and subjective evidence of their intention to farm the property for profit.

The Buchanans argument is a challenge to the county's decision to rely on applicant's evidence instead of their testimony, regardless of how it is framed. The county was not required, as a matter of law, to rely on the Buchanans' testimony, and it was not required to reject the countervailing evidence submitted by the applicant. LUBA concluded that substantial evidence supported the county's determination regarding the profitability of the conjoined use of the subject property. LUBA correctly applied the substantial evidence standard in reviewing the county's determination, and we must affirm under our standard of review. *See Citizens for Responsibility*, 281 Or App at 345 (stating standard).

We note that the Buchanans' argument relating to objective and subjective evidence of profitability is similar to an argument raised by LCDC in its *amicus* brief that the definition of "farm use" in ORS 215.203 supports application of a "subjective intent" standard in evaluating profitability. LUBA applied an "objective" standard when it evaluated profitability in its first order in *Landwatch I*:

"[W]hether land may be employed 'for the primary purpose of obtaining a profit in money,' for purposes of ORS 215.203(2)(a), is an objective test that focuses on the activities that would be occurring on the land.

"Accordingly, we have explained that the question under OAR 660-033-0020(1)(a)(B) is 'whether a reasonable farmer would be motivated to put the land to agricultural use, for the primary purpose of obtaining a profit in money. * * *. Similarly, we have said that the question

is whether the property is capable of farm use with a reasonable expectation of yielding a profit in money. \*\*\*. The Board of Commissioners did not err in considering whether a 'reasonable farmer' would have an expectation [intent] of obtaining a profit in money from growing crops on the subject property."

*Landwatch I*, LUBA Case Nos 2023-006/009 at 28.

No party challenged LUBA's application of the objective "reasonable farmer" standard applied by LUBA in its first order, and the issue is therefore waived. *See Beck*, 313 Or at 154 (holding that parties may not raise "old resolved issues again").

## IV.   CONCLUSION

LUBA's order was not unlawful in substance. We therefore affirm LUBA's order.

Motion to strike granted; affirmed.